CASE 22—GUARDIAN AND WARD—MAY 29, 1884.

## Harris, &c., v. Berry.

APPEAL FROM MARION CIRCUIT COURT.

1. The law requires of a guardian that he should act in good faith toward his ward, and transact his fiducial business with the same prudence and discretion that a prudent man is accustomed to exercise in the management of his own business affairs.

2. It is the right and the duty of a guardian residing with his wards in Kentucky, to employ competent counsel in Missouri, where the wards own real and personal estate.

3. If the attorney, acting in good faith in the discharge of his duties, commit an error of judgment affecting injuriously the interest of the wards, the guardian continuing to act in good faith can not be held liable for the injury to the wards. Having done his utmost, he can not reasonably be required to do any more.

Harris, &c., v. Berry.

4. By the Missouri statute, a female arriving at the age of eighteen years. is of full age, and she, although a minor in Kentucky, has the right, as an adult in Missouri, to control the judgment and execution against the executor of her father, inasmuch as she was one of the parties in interest.

W. B. HARRISON, JNO. McCHORD, and W. LINDSAY for APPEL-LANT.

1. Appellee has been guilty of gross neglect as guardian.
2. He neither compelled the executor of Phillips to settle his accounts, annually as the law of Missouri requires, nor did he so much as examine any settlement, or see what his wards were entitled to until May, 1870, five years after the executor qualified. Then with a judgment in favor of his wards against the executor, and he in failing circumstances, two of the sureties dead, appellee took no steps to enforce payment until March, 1872.
3. This is gross and inexcusable negligence. Story's Conflict Laws, sec. 65; Hanna v. Spotts, 5 B. Mon., 365; McDonald v. Meadows, 1 Met., 508; Smith v. Smith, 7 J. J. Mar., 239; Hemphill v. Lewis, 7 Bush, 216; Morris v. Beauchamp, 4 B. Mon., 74.

ROUNTREE & LISLE and A. DUVALL for APPELLEE.

1. The law requires reasonable diligence on the part of guardians. A fiduciary is required to act as a prudent man would in relation to his own affairs
2. Nothing more should be required of a guardian than that he should act in good faith, and with the same prudence and discretion that a prudent man acts on matters pertaining to himself.
3. To say that although you may manage your wards' as you do your own, you are, nevertheless, to answer out of your pocket for every error of judgment or mistake of law is harsh beyond measure. This is not the law. Thomas v. White, 3 Litt., 184; Mory v. Fenwick, 4 B. M., 309; Cross v. Peter, 7 *Ib.*, 413; Story's Eq. In., sections 1272, 1269; Seller v. Dunn, 6 Bush, 638; 4 Johnson's Ch'y. Rep., 619; Hill on Trustees, 572; Chaplin v. Moore, 7 Mon., 166; 21 Grattan, 199; 21 Ohio St., 444; 1 Strobbatt's Eq., 170; 10 Johns., 272; *Ib.*, 578; 3 Atkyns, 480; 1 Penn. & Watts, 207; Maria v. Kirby, 12 B. Mon., 545; 8 Wall, 168; Cosby Court, Lim., 16; 4 Wash. C. C., 380; 5 Howard, U. S., 255.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In the year 1864, Robert Phillips died in Perry county, Missouri, the owner of a large estate, real and personal. He left a last will and testament, by which

he devised his estate to his widow and children. He had been twice married, leaving surviving him four children by his first and one child by his last wife.

Henry L. Caldwell, of Missouri, and the appellee, N. T. Berry, of Lebanon, Kentucky, were appointed as his executors, Caldwell alone qualifying. In his will he gives to his children certain portions of his real estate, and to some more valuable than that given to others, and requires his executors as soon as practicable to have the property devised to his children valued, and in the distribution of his personalty due regard is *to be had to said valuation so as to. make all the share of his children equal.* He appointed the appellant, N. T. Berry, the testamentary guardian of his children by his first wife, and requested that each of them and their estates should be transferred to Kentucky as soon as practicable.

It was also his wish that the county court should make division according to his will without waiting for three years to expire as required by the statute of Missouri. In 1865, the appellee, N. T. Berry, qualified as guardian for the four children in the Marion county court, in this State, and the children were removed by him to Kentucky, and their domicile was in this State from that time until the appellants, the daughters, married; one of them, Laura, married S. L. Gray, and the other, Lunette, married T. M. Harris.

The grandfather of these children died in the year 1866, and Berry, the appellee, as their guardian, made a settlement before the Marion county judge in 1869 of the estate coming to his hands from their grandfather. In 1869 and 1871 the appellee made settlements in

the same court of what came to his hands from both estates. In 1872 he made a final settlement of his accounts as guardian of Lunette, who married Harris, she being 21 years of age, and in 1874, after Laura became of age, made a settlement of her accounts.

This action is brought by the two daughters and their husbands seeking to make the guardian liable for assets that came into the hands of the Missouri executor, and were unaccounted for by him, it being alleged in the petition that the same was lost to the appellants by reason of the want of diligence on the part of their guardian in collecting it in the attempt to collect their estate for distribution. Each distributee of this estate was entitled to about $11,000, and failed to get that much by some three thousand dollars.

It is alleged in the petition that the judgment obtained against Caldwell in the Marion county court in his final settlement that was not made until 1870, was $9,072 to each one of the children, and the amount of this judgment the appellants say was concealed from them by the guardian, and for this they ask a judgment. It is evident that this sum was the entire amount due to each child from the personal estate, and that the greater portion of that judgment had been paid to the guardian and by him accounted for in his settlement with his wards. The judgment seems to have been rendered, or the final addition made, without reference to what had been paid by the executor, Caldwell, to the guardian. Berry had, in fact, received for his four wards near $17,000 before the settlement of 1870 was made, and after that time collected other sums, all of which he has settled or accounted for in

his settlements. The only question is, should he be compelled to account for the assets that never reached his hands. If he used such diligence as a prudent business man would have exercised under the circumstances, he should not be held liable. He undertook to collect the estate of the infants in Missouri, and having done so he was required to use such diligence at least as he would have used in reference to his own affairs.

It was not required of him that he should remain in Missouri and watch this estate as a resident guardian or fiduciary should have done, but he was required to have some vigilant, prudent agent or attorney to aid him in the collection of the moneys due his wards, and to take such steps as seemed to be necessary for that purpose.

We think the general rule as to the diligence required of trustees and guardians when applied to the facts of this case, releases the guardian from any liability for the default of the executor. The rule is: "That nothing more should be required of a trustee than that he should act in good faith and with the same prudence and discretion that a prudent man is accustomed to exercise in the management of his own affairs." To subject a guardian to losses that he could not anticipate, and when the evidence shows that he is acting in good faith and with at least ordinary judgment, would be inequitable and unjust.

The case of Hemphill v. Lewis, reported in 7 Bush, is relied on by counsel for the appellants in this case, where one guardian sued a former guardian but omitted to sue his surety, and the guardian becoming insolvent, and the claim not being prosecuted in time against the

surety, the estate of the infant was lost, the guardian was held responsible. There is a seeming hardship in that case in making the guardian liable, as this court has in many cases recognized the general rule already given, that a trustee who in the faithful discharge of his duties, has, in a matter of judgment or discretion, erred so as to expressly affect the parties in interest, he will not in general be held liable unless guilty of gross negligence, &c. Cross v. Petre, 7 B. M. In that case, however, it might well be said that the failure to sue the surety and thereby permitting him to be released by lapse of time was a gross neglect of duty, and for that reason the guardian should be held liable.

The executor had three years in this instance in which to make distribution by the law of the State where he qualified. He made a final settlement in 1870, and during a great part of the time he acted as executor, having qualified in 1864, the country was in such confusion, and the business interests of the State of Missouri so much crippled, as to render it difficult to settle, collect, and distribute, a large estate with the facilities that would be required of a fiduciary under ordinary circumstances. The appellee, Berry, had sought the advice and employed as his agent the best counsel that part of the State afforded, and when the settlement was made in 1870, upon which an execution might have been issued for the amount due in accordance with the law of that State, the appellee was advised by his counsel that he had better not issue the execution; that more could be made by delay than by attempting to coerce payment. Acting upon professional advice and being placed in such a condition as

absolutely required of the guardian that he should seek such advice, it would be unjust to hold him responsible when living in Kentucky. He could not be presumed to know as much of the business affairs of the executor and his ability to pay as those who lived in that State and was familiar with his surroundings.

Lunette, in 1870, one of the wards, by the law of Missouri was *sui juris*, and the other became so in a short time thereafter. The execution had to issue in the name of one of the children at least, and was so issued, she having the same right to control it as she would have had if of full age under the law of that State. The status of all persons who seek the aid of the courts of law or equity in Missouri must conform to the law of that State, and if the female at the age of eighteen is empowered by law to sue and be sued, the fact that she is not of age by the law of the State where she lives, will not authorize her guardian to sue for her or permit the mode of procedure in Kentucky to control the manner of relief in Missouri.

The law of Missouri gave to the children a lien on all the real estate of the executor to secure them in the amount of their judgment, and by the advice of counsel the issuing of the execution was delayed, as it was manifest in the opinion of counsel that if executions issued the property would not pay the judgment. He gave no authority to his attorney to hold up the execution longer than he thought prudent, as Berry states, and to use such judgment on his part as would enable him the more certainly to make the money. His actions and conduct should not be judged, and the same responsibility attached to his acts as would be

the case if he had lived in the county and State, and as a business, prudent man would have been required to exercise his own judgment in regard to a matter about which he was as capable of judging as the attorney employed by him. The testator knew when he selected the appellee as the guardian for his children that the latter must necessarily select some one to act for him in Missouri in winding up this estate. If, then, he selected a prudent advisor and counsellor, he ought not to be made liable even if his agent acted improperly in not issuing his execution sooner, the execution having been issued in 1872.

The fact also appears that the attorney did collect without the aid of an execution more than two thousand dollars after the settlement was made. Beside his lawyer died, and the guardian then employed other able counsel to defend an action in equity with an injunction that the executor had obtained against the collection of the execution issued from the county court. That injunction was dissolved, the executor obtaining a credit for a small sum that by mistake had been charged against him.

The judge of the circuit court testified that "during all of his professional experience he never saw a man more diligent and attentive to the interests intrusted to his care than Mr. Berry during the entire litigation, or who under like circumstances used greater efforts to protect those interests than he did then and afterwards." This statement is corroborated by all familiar with the business connected with the settlement of this estate, and the acts of appellee with reference to it.

After Berry, appellee, had settled with these appellants, he informed them of the condition of the estate

Harris, &c., v. Berry.

in Missouri. They knew of the equity action; the liability of the surety in the injunction bond as well as the sureties in the bond as executor. He had employed counsel to prosecute the claim against the sureties, and these appellants were unwilling to look to the sureties and sought relief against their guardian, whose acts so far as we are able to judge from this record evidence not only the best of faith, but that degree of prudence that he would doubtless have exercised in reference to his own business interests, and measuring his conduct by the standard of common prudence and judgment, no responsibility should rest upon him in the form of a judgment in favor of these appellants.

The county court of Missouri alone had the power to make the division between the children as required by the will of the testator. The division was made, and the valuation fixed upon the real estate so as to produce equality between them, or if not the guardian should not be held responsible, besides giving to the appellants the interests they did get on the moneys paid them by the guardian to make them equal with those having real estate of more value, and giving to those having this real estate its income, and those receiving the money when settlement was made have now more income by way of interest than the income realized from the realty by those whose share in the personalty was lowered by having received it. So there is no such unjust division as calls for relief, and the guardian has received no more compensation than he was entitled to receive.

The judgment below is therefore affirmed.