CASE 88—PETITION EQUITY—FEBRUARY 23.

## Boaz's Adm'r v. Milliken, &c.

APPEAL FROM SIMPSON CIRCUIT COURT.

1. A GUARDIAN IS LIABLE for loss to the trust estate by the fraud or wrong of another which was made possible by his own gross neglect, although he may never have received the estate.

2. CASE ADJUDGED.—At the time of the appointment of a guardian there was pending a claim of his ward for a pension filed by a former guardian in the proper department at Washington. The newly appointed guardian allowed two years to pass after his appointment before taking any steps to secure this claim for his ward. In the meantime the former guardian had secured the certificate of the county court clerk of his county that he was still the guardian, and thereupon received the pension money his former ward was entitled to, the greater part of it having been received by him within ten months after the appointment of the new guardian.

Boaz's Adm'r v. Milliken, &c.

*Held*—That the second guardian was guilty of gross neglect in taking no step looking to the collection of the claim, and in not notifying the pension department of his appointment, thus allowing the claim to stand in the name of the former guardian, and exposing it to the hazard of collection by him; and he is, there-. fore, liable to the ward. Judge Pryor dissenting.

.A. DUVALL FOR APPELLANT.

The ward's claims constituted *debts* against the Federal Government, and the failure to take steps to collect these claims was as much negligence as if they had been debts against an individual.

R. RODES ON SAME SIDE.

It was Milliken's duty to collect the claim of his ward at once, or to notify the Pension Department of his appointment. His failure to do so was gross negligence, for which he is liable. (Hemphill v. Lewis, 7 Bush, 214–15; 1 Perry on Trusts, sec. 440.)

G. W. WHITESIDES ON SAME SIDE.

.Milliken was guilty of negligence in not notifying the Pension Department of his appointment as guardian, and his sureties must make good the loss resulting therefrom. (Commonwealth v. Miller, 5 Mon., 209; Hemphill, &c., v. Lewis, 7 Bush, 215.)

.JNO. M. GALLOWAY FOR APPELLEES.

:1. The fund due the ward which the guardian failed to collect was a mere bounty. Moreover, the guardian had no reason to anticipate that the former guardian would, with the aid of the county clerk, be enabled to perpetrate the wrong which he did. For these reasons he is not liable.

2. Where a fund has never come into the guardian's hands and is apparently safe, he is not bound to sue at once. (Konigmacher v. Kimmel, 21 Am. Dec., 374.)

:3. This case distinguished from Cross v. Petree, 10 B. M., 413, and Hemphill, &c., v. Lewis, 7 Bush, 214.

.EDWARD W. HINES ON SAME SIDE.

1. The guardian could not possibly foresee what happened, and he is not liable for failing to guard against it. The Pension Department threw around the fund so many safeguards, there was no reason to suppose any additional precaution was necessary. (49 Am. Dec., 516, note.)

2. Chancery deals with tenderness toward a trustee acting in good faith. (Keller's Appeal, 8 Pa. St., 288.)

3. Milliken was not required to deal with the former guardian as a rogue. Such high vigilance is not required of this class of trus-

tees. (Irwin's Appeal, 35 Pa. St., 397; Neff's Appeal, 57 Pa. St., 91; Konigmacher v. Kimmel, 1 P. & W., 207; s. c. 21 Am. Dec., 374.)

4. There is neither pleading nor proof showing that Milliken did not notify the Pension Department of his appointment.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Simeon Boaz died a soldier in the Federal army, leaving an infant son. In November, 1873, David S. Bryan was appointed his guardian, and shortly thereafter he, as such guardian, by an attorney, prepared and filed, under the laws of the United States, in the proper department at Washington, two claims for his ward in right of the father, one being for back pay and bounty, and the other for a pension.

While they were yet pending, and before any thing had been allowed upon them, Bryan resigned, and was discharged as guardian.

On September 2, 1874, the appellee, G. H. Milliken, qualified as the guardian, and together with his surety, W. W. Milliken, covenanted in his bond that he "would faithfully discharge the trust." The infant had no estate whatever save these claims.

Upon March 4, 1875, Bryan collected and receipted to the government for one hundred and thirty-seven dollars and forty-six cents of bounty money; July 31, 1875, for one thousand two hundred and thirty-six dollars and seven cents of pension money, and on September 8, 1875, December 8, 1875, March 30, 1876, and June 22, 1876, thirty dollars at each date, or one thousand four hundred and ninety-three dollars and fifty-three cents in all. He obtained the money in each instance upon his affidavit and the certificate of the county court clerk that he was still the guardian.

Boaz's Adm'r v. Milliken, &c.

On September 4, 1876, G. H. Milliken made oath to the proper paper to be filed by him as the substituted guardian in the proper department at Washington; and not until this time did he, so far as the record discloses, take any step whatever in the direction of securing the claim for his ward, or looking to its prosecution, or by way of notifying the department that he had become the guardian. In fact, it does not appear that he ever even made an inquiry of any character as to the claims, although there is evidence showing that he knew, when he qualified, of their existence, and that they were pending before the proper governmental department.

The conclusion is irresistible that he became guardian by reason of their existence, and to further their prosecution, because the ward had no other estate whatever.

The only question necessary to be considered upon this appeal, and it is one which is not free from difficulty, is whether the guardian, Milliken, was guilty of such gross neglect and inattention, after he voluntarily took upon himself the trust, as to render himself responsible for the loss of the money by the fraud of Bryan. No effort seems to have been made to collect the money from him by the appellee, Milliken, and he is doubtless irresponsible.

The government having paid the money over to the person who, upon the record upon file in its department, was entitled to receive it, would, beyond question, refuse to pay it again, so that if the hardship of the case could be considered by us, it would be in equipoise.

A guardian is a trustee, and all that a court of equity requires of him is ordinary prudence and skill. An executor or administrator must be diligent in the collection of a debt in order to prepare for distribution; but if the fund has never come to his hands, a guardian is not bound to sue at once, but may leave the debt where he finds it, unless the circumstances be such that they would apprise an ordinarily prudent man of danger of its loss by doing so. He is not an insurer, and is not liable for the fraud or wrong of another as to the trust estate, unless the danger is incurred by his own gross neglect. Indeed, Lord Hardwicke said:

"If there was no *mala fides*, nothing willful in the conduct of the trustee, the court will always favor him."

But while this is the case, yet if he is clearly shown to have been guilty of supine or gross negligence in the management of the trust estate, he should be charged with the loss occasioned thereby, although he may never have received it. His liability is not confined to cases of active, willful interference upon his part; but may arise from an omission of such a character that it can only be attributed to his gross neglect or a failure of a plain duty. He must act as others do with their own goods. His duty is not less than what an ordinarily prudent man would do for himself.

This at least should be required of him as to a trust which he has voluntarily assumed for one who is incapable of attending to it. If he has been either supinely negligent, or guilty of willful default, he must make good any loss arising therefrom.

It does not appear that the guardian in this in-
stance is chargeable with willful wrong. It is con-
ceded that he got none of the money. He, however,
knew when he assumed the trust that the claims
were pending against the government; he must be
held to have known that they were in the name of
Bryan, and if allowed, that they would be so au-
dited and paid, unless the department was in some
way notified of the change of guardianship. It was
his duty to investigate and prosecute the claims;
he knew of their existence; they constituted the
entire estate, and it is both fair and safe to assume
that had they not existed he would never have qual-
ified. They were not a gratuity upon the part of
the government, but a claim for services rendered
to it, and for the payment of which it had provided
by law.

If the claim proved to be a valid one, then it
was a debt, or at least an obligation upon the gov-
ernment.

It may be said, however, that if this be so, then
the guardian in his discretion had the right to let
the money remain in the hands of the government.
The correctness, however, of the claim was unascer-
tained; it was the duty of the guardian to prose-
cute it to a settlement; and moreover, *he knew that*
*it was in the name of one who was no longer enti-*
*tled to receive it, and that this fact was not known*
*to the government.* He knowingly permitted this
state of case to continue for over two years, thus
exposing the claim to the hazard of collection by
the party in whose name it had been filed. This

omission of a plain duty, and his failure to look to its prosecution, not only endangered the allowance of the claim, but its safety when allowed.

As well might it be said that if money is in bank belonging to the ward, but to the credit of an irresponsible party, and one who is not entitled to it, that the guardian, with knowledge of all these facts, can stand supinely by for years, and until the party has drawn the money, and then say that he is not responsible because it had never come to his hands. It seems to us that common care required the guardian, within a reasonable time after his qualification, to ascertain the character of the claims, their progress toward a settlement, and to have notified the department in some way, as he could easily have done by a copy of the order appointing him, or even by a letter, that he was the guardian.

Upon the contrary, from September 2, 1874, until September 4, 1876, he does nothing whatever in this direction, not even so much as making an inquiry as to the claims. If the money had been drawn by Bryan shortly after the qualification of Milliken as guardian, the case would be different; but none of it was paid for six months thereafter—the greater portion of it not until July 31, 1875, and some of it not until June 22, 1876.

The record shows an utter lack of all diligence upon his part, and such gross and supine neglect that were he to be exonerated there would be no liability upon the part of trustees, save in case of fraud or willful wrong.

It is the first duty of a guardian, after his pa-

pointment and qualification, to take possession of the ward's estate, and to inquire into its condition, and take reasonable precautions to protect it from loss. In this instance the guardian could easily have taken such steps as would have saved the money wrongfully obtained by Bryan to the estate. The circumstances were such as to put him upon his guard, and the exercise of reasonable care upon his part, within a reasonable time, would have prevented the loss. The want of what was an evident needed precaution by him occasioned it. It was not a case for the exercise of his discretion, but one where a plain duty was imposed upon him; and if it had been performed, even to the slight extent of informing the department that he had become the guardian, or by even an inquiry by him as such trustee as to the condition of the claims, the loss would have been averted.

It was said in the case of Cross v. Petree, 10 B. M., 413:

"A trustee who, in the faithful discharge of his duty, has, in a mere matter of judgment or discretion, fallen into an error that has resulted in an injury to the persons interested in the trust, is not, in the general, responsible for the loss, where he has acted in good faith, and not been guilty of gross negligence.

"But there is an obvious distinction between cases where there is no discretion to be exercised, but a plain and positive duty imposed, and those where such a discretion must, from the very nature of the act to be performed, exist and be exercised, and

vol. 83.—41

where the judgment of the trustee must, upon a survey of the whole matter, determine the line of conduct most advisable for him to pursue.

"In the former case he is not required to determine what course is most advisable to adopt; *it is his duty to act*, and if he fail to do it and loss ensues, he will be liable for it."

The case of Hemphill, &c., v. Lewis, 7 Bush, 214, supports this view of the law.

The distinguished Chief Justice who delivered the opinion in that case said:

"When the law intrusts the estate of an incompetent infant to the care and protection of a guardian, the fiduciary undertakes to be vigilant, faithful and competent. These elements of qualification imply as much knowledge of law as may be necessary for safety; this, however procured, he assumes to possess and properly exercise."

Any other rule would hazard the estate of every ward beyond that of the guardian himself; and it must prevail over any sympathy which may arise in a particular case.

Our conclusion is that the appellees are liable for the several sums collected by Bryan, with six per cent. interest thereon from March 6, 1880, it being the date of the filing of the amended petition; and the judgment is reversed for a judgment and further proceedings consistent with this opinion.

JUDGE PRYOR DELIVERED THE FOLLOWING DISSENTING OPINION:

Bryan was appointed guardian for one Boaz, who had no estate, but was entitled to a bounty or pen-

sion by reason of services rendered by his father as a soldier in the late civil war.

He employed an attorney, and after several years" effort to obtain the pension resigned his office as guardian, and the appellee, Milliken, was appointed guardian in his stead.

The appointment of Milliken was made by the Simpson County Court in the month of September, 1874. It may be properly inferred from the record that the appointment of Milliken was for the purpose of prosecuting the claim for the pension and collecting the money.

A guardian before he can obtain this pension money from the pension agent is required to take an oath of his loyalty to the Constitution, and, in addition, must show by two witnesses that he is still guardian, and that his ward is alive.

After Bryan had resigned his office, which was in September, 1874, he obtained in June, 1875, the certificate of the county clerk of his county that he was still the guardian, with the statement of two witnesses that his ward was still alive, and on the seventeenth of July, 1875, took the oath as to his loyalty, and on the thirty-first of July, 1875, receipted to the pension agent for one thousand two hundred and thirty-six dollars, the pension money that the ward was then entitled to. So this former guardian, within ten months after Milliken had been appointed, collected this money, and having failed to account for it, and being insolvent, Milliken is sought to be made responsible by the administrator of the ward, the latter having died after this money

was received.   He also collected other small sums, but the one thousand two hundred and thirty-six dollars is the principal sum in controversy.

The court below decided in favor of Milliken, but this court has reversed that judgment.

It is difficult to perceive upon what theory the responsibility of Milliken is to be placed; that Milliken is liable, if the money had been lost by any neglect on his part that shows a want of ordinary diligence will be conceded, and his liability must depend on the facts from which this negligence is sought to be established.

There is no proof whatever that Milliken knew that the pension or bounty money had been allowed; but, on the contrary, the plain inference from the record is that he was entirely ignorant of any final action on the claim.   He knew that the former guardian had made the application through an attorney, and with the delays attending the prosecution of such claims, and the security of the claim when allowed being so apparent, he doubtless made no inquiry within the ten months.   He knew the money would be in the vaults of the treasury, if the claim was allowed, a safer deposit than in his own pocket, and had no right to anticipate the bad faith of the former guardian, or that he would or could arm himself with the certificate of the county court clerk that he was still the guardian to enable him to get this money.   It may be, and is urged, that Milliken should have notified the pension department that he was the guardian, and for that reason was guilty of negligence.   Why should he have notified

the agent of the government, or filed the evidence
of his appointment, before he was entitled to draw
the money? If an insurer of the fund, it was his
duty to do so, or if he had reason to believe that
the former guardian would practice such a fraud,
he might and ought to be held responsible. Ordi-
narily the debtor paying the money to one who has
been removed, or is not the guardian, would still
remain liable to the real guardian; but in this case
Milliken can not sue the government, and it is en-
tirely optional with those in power whether they
will again pay it; in fact, would require legislation
on the subject.

The only negligence Milliken has been guilty of
consists in failing to use such diligence as would
prevent one whom he had the right to believe was
perfectly honest from stealing this fund. If he had
known the fund was in the treasury for him, his
permitting it to remain there for nine or ten months
without using it would not constitute gross neglect.
How many business men permit money to remain
in a place of safety for a much longer time without
even interest as a precaution against loss?

It is not bad faith or gross neglect for a guardian
to permit his ward's funds to remain in the vaults
of the government for ten months without withdraw-
ing them. He may be chargeable with interest, but
if some one else withdraws the money by deception
and fraud, the guardian is not responsible. Where
the guardian has acted in good faith, and not been
guilty of gross neglect, he is not responsible. He
may indulge the debtor to his ward from time to

time without suing him, and if the debtor should become insolvent he is not responsible unless he had reason to believe that his failure to sue would result in loss to his ward. So in this case he had every reason to believe, the government being the debtor, that the claim when allowed would be perfectly safe, and the only reason he can be held bound is his failure to anticipate the dishonest conduct of Bryan, and to give the pension agent notice of the fact that he was entitled to the money, and not Bryan.

This is a higher degree of diligence than the conduct of any such fiduciary should be measured by, and instead of making him responsible for failing to do that which an ordinarily prudent man would have done under the circumstances, he is in fact made an insurer of the ward's money.

For these reasons I must dissent from the opinion rendered. (Cross v. Petree, 10 B. M., 413.)