## ESTATE OF HOWARD WEBBER, A MINOR.

APPEAL BY J. K. BALTHASER, GUARDIAN, FROM THE OR-
PHANS' COURT OF BERKS COUNTY.

Argued March 4, 1890—Decided March 17, 1890.

A guardian, who receives a collectible note as part of his ward's estate,
and neglects to secure its payment by obtaining judgment or otherwise,
but, with ample time and opportunity so to secure it, permits the pro-
perty of the maker to be distributed under an assignment for the benefit
of creditors, is guilty of supine negligence and becomes chargeable
with the amount thereof.

Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM and
MITCHELL, JJ.

No. 120 January Term 1890, Sup. Ct.; court below, number
and term not given.

On February 20, 1889, Jared K. Balthaser filed his final ac-
count as guardian of Howard Webber, a minor. Exceptions
to the account having been filed by the ward, the account was
called for audit on April 1, 1889.

On October 5, 1889, the auditing judge, SCHWARTZ, P. J.,
filed the following adjudication:

The ward's exception to this account is that the accountant,
his guardian, did not, but should have charged himself with
the one fourth of the proceeds of a promissory note his mother
held against Maria Elizabeth Faust.

The facts relating to and governing this matter are as fol-
lows:

Matilda Webber died intestate in April, 1877, and left to
survive her a widower, John B. Webber, and four minor chil-
dren under the age of fourteen years, viz.: Howard, John M.,
Mollie Ann and Annie E. Webber, for whom the accountant,
upon their father's petition, became guardian on February 23,
1878.   She died possessed of household goods and kitchen fur-
niture and of a promissory note against her mother, Maria
Elizabeth Faust, for $1,000, on account of her share of inher-

Adjudication.

itance out of her father's estate. There was due on this note, April 1, 1878, the sum of $719.61. The following fall, the accountant and Webber, widower, assuming the authority without raising an administration upon the estate, made sale of the goods, nearly all of which were purchased by Webber, and afterwards, with the consent of Balthaser, were allowed to Webber as his share of inheritance of the estate.

The note, however, was delivered to the accountant as guardian for the use of his wards. He now testifies and contends that Esquire Haag placed it among his papers surreptitiously and without his knowledge and consent and that he had never accepted it. What is his own testimony upon this point? He says he took the note back to Haag and after some conversation with him retained it, and that he, in company with Haag, called upon Mrs. Faust, the maker of it, and demanded payment; that Mrs. Faust replied that she could not then pay it, but would do so as soon as she had money; that, afterwards, he took the note to Daniel Ermentrout, Esq., an eminent counsel of this bar, who, he alleges, said that the note was worthless and could not be collected; that he, however, had left it with him and that it remained there for eleven years, during which time he made but one or two inquiries respecting it; that he paid him nothing for the advice, nor does he state what information he gave the attorney to base said advice upon. . . . .

Mrs. Maria Elizabeth Faust held in fee, when her daughter, Matilda Webber, the mother of the exceptant died, and up to October, 1879, a plantation, farm and tract of land, situate in Centre township, Berks county, containing 144 acres and 82 perches. It was sold by her assignees for creditors for the sum of $6,792.09, less $3,544.39, dower charge for the use of the said Maria Elizabeth Faust, widow of Solomon Faust, deceased, who was at this time the owner of the property, and was sold by her assignees as such. She having become the purchaser, her dower interest merged into that of the title. Her entire interest in and to it passed by the sale, divesting all rights in it, save the payment of $3,544.39, to the heirs of Solomon Faust at her death. Instead of selling it divested of her dower interest, the assignees sold it subject to the assignor's dower interest in the property as widow, at the expense of accountant's wards. Notwithstanding this, there was still remaining

Adjudication.

$92.97, after the payment of all her debts, which, instead of being distributed to the accountant for his wards, was distributed to the assignor. . . . .

When Balthaser took the note it became his duty to do either one of two things: Obtain security from Maria Elizabeth Faust for the payment of said note, or take out letters of administration upon the estate of Matilda Webber and obtain judgment against her for the claim. According to the accountant's own testimony, fully a year elapsed between the taking and his demanding payment of the note, and the date of the assignment of Maria Elizabeth Faust. In addition to the $92.97, which he allowed to be distributed to the assignor after payment of debts, without making claim for it, he also allowed a fund of $360.62 to be distributed among the heirs of the said Maria Elizabeth Faust, deceased, upon the adjudication of the account of her administrators, January 8, 1889.

On the 28th of October, 1879, over one year after Balthaser got the note for his wards, Joseph Faust obtained judgment against Maria Elizabeth Faust for $437.86, and upon the distribution of the funds in the hands of the assignees, his judgment was paid in full; showing that this accountant had ample time and abundant chances to collect or secure his claim.

In Royer's App., 11 Pa. 36, the Supreme Court says: "A guardian is liable for losses of money of his wards incurred through culpable indifference and negligence, . . . . A fiduciary relation requires vigilance as well as honesty. A dead and sluggish calm, a supine negligence, is full of peril to the minor; it is often as fatal as positive dishonesty."

No one would pretend to say that in the case in hand there was not a sluggish calm, nor that there was not supine negligence. Neither would it be claimed that this accountant would have stood idly by and seen every opportunity for making his money pass away, without making some effort to secure it, had he undertaken to manage this matter for himself or his children.

At the time he received this note, no liens, except the $3,544.39, stood against the old lady's farm. Thus he might easily have recovered the whole of his claim. The court is clearly of the opinion that his case is one of exceeding gross and supine negligence, and that it would be derelict in its duty did it not surcharge him with at least part of this money.

Considerable expense would, no doubt, have been connected with the collection of this money. The court now finds that the net sum of $400 could have been realized by the guardian, if he had in anywise discharged his bounden duty. It also finds that he should have had the money seven years ago. He is, therefore, surcharged on this ward's account with $100 thereof and seven years' interest, viz.: $142.

—To the foregoing adjudication the accountant filed exceptions alleging, in substance, that the auditing judge erred "in finding, from all the facts in the case, gross and supine negligence on the part of accountant, and in surcharging him with $100 and interest."

Said exceptions having been argued, they were dismissed, and the adjudication confirmed. Thereupon, the accountant took this appeal, specifying the dismissal of his exceptions and the confirmation of the adjudication as error.

*Mr. C. H. Schaeffer*, for the appellant.

Counsel cited: Charlton's App., 34 Pa. 473; Neff's App., 57 Pa. 91; Chambersburg S. F. Ass'n's App., 76 Pa. 203; Landmesser's App., 126 Pa. 115; Knight v. Lord Plimouth, 3 Atk. 480; Calhoun's Est., 6 W. 185; Crist v. Brindle, 2 R. 122; Eyster's App., 16 Pa. 376; Vez v. Emery, 5 Ves. 144; Jackson v. Jackson, 1 Atk. 513; Johnson's App., 12 S. & R. 317.

*Mr. Morris N. Schaffer* (with him *Mr. Rieser*), for the appellee.

Counsel cited: Johnston's Est., 9 W. & S. 109; Reber's App., 125 Pa. 24; Wills's App., 22 Pa. 330; Fahnestock's App., 104 Pa. 46; Hughes's App., 53 Pa. 500.

PER CURIAM:

We would gladly relieve this guardian from the surcharge of $142, if we could do so consistently with our duty, but we cannot. The learned judge of the Orphans' Court has found, upon abundant evidence, that he was guilty of supine negligence, and that the money due his ward from Maria Elizabeth Faust was lost in consequence thereof. Had reasonable diligence been used it could have been collected. The guardian

made no serious effort to collect or secure it. Moreover, he allowed the $92.97, surplus remaining in the assigned estate of the said Maria Elizabeth Faust, to be distributed to the assignor; and also allowed $360.62 to be distributed to the heirs of said Maria. It may be the guardian had no knowledge of these matters; he says he had not, and it may be so. But he should have known and would have known it, if he had paid even reasonable attention to the duties of his trust. While a court is always loth to surcharge a trustee with money that never came into his hands, and exacts from him only reasonable and ordinary care in such matters, it will not do for a guardian to utterly neglect his duties in the care and management of his ward's estate. Ordinary prudence in this instance would have saved his ward's money, and we are not measuring his responsibility by any higher standard. It is not too much to say that, had this been his own money, in all probability it would not have been lost; and he ought not to have been less vigilant in his ward's interest than he would have been in his own.

The decree is affirmed, and the appeal dismissed, at the costs of the appellant.