## Layne, et al. v. Clark

(Decided February 18, 1913.)

### Appeal from Floyd Circuit Court.[7]

1.  Guardian and Ward—Sureties—Illegal Sale of Timber by Guardian—Gross Neglect and Fraud of Guardian—Recovery by Ward.— Where a guardian is not only guilty of gross neglect in the man-

agement of his ward's estate, but actually participates in the wrong by which an illegal sale of timber is effected, he is liable to his ward for the market value of the timber so taken, even though none of the proceeds ever came into his hands.

2. Guardian and Ward—Liability of Surety—Individual Liability.— Where a surety on a guardian's bond, claiming certain timber under an illegal contract of sale, converts the same to his own use by connivance with the guardian, he is liable to the ward not only as surety, but as an individual, for the market value of the timber so taken.

3. Guardian and Ward—Guardian's Bond—Surety—Abatement of Action as to Surety—Release of Other.—Where a ward sues the two sureties on his guardian's bond, one of the sureties is not released by the death of the other and the failure of the ward to have the action revived against his estate.

4. Guardian and Ward—Action on Bond—Finding of Chancellor— Evidence—Sufficiency.—In an action by a ward against his guardian and his surety to recover the market value of certain timber unlawfully taken by the surety from the ward's land, evidence as to value examined and held sufficient to sustain the finding of the chancellor.

5. Descent and Distribution—Joint Owners of Land—Illegal Sale of Timber—Right of Action for Recovery—Death of Joint Owner in Infancy and Without Issue—Section 1401, Kentucky Statutes.— Where a brother and sister own jointly certain land inherited from their father, from which the timber is cut under a contract that passed no title, and thereafter the sister dies in infancy and without issue, the right of action on the part of the sister to recover one-half of the market value of the timber does not descend to her brother as real estate under Section 1401, Kentucky Statutes, but vests in her administrator, and the proceeds of any recovery that may be had are personal property and subject to the statute governing the descent and distribution of that character of property.

HARKINS & HARKINS, for appellants.

JAMES GOBLE, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming on original and cross appeals.

On September 5, 1892, Henry Hall qualified as guardian of Jacob Clark and Alice Clark, with J. P. Layne and F. H. Morrell as sureties on his bond. Jacob Clark and his sister were the only children of, and inherited certain land and other property from their father, John Clark, who died in the year 1878. John Clark also left a widow, Sarah Clark, who afterwards intermarried with Henry Hall. Alice Clark died on September 2, 1897, unmar-

ried and intestate. At that time she was only 20 years, two months and 22 days old.

Plaintiff, Jacob Clark, brought this action against defendants, Henry Hall and the sureties, J. P. Layne and F. H. Morell, to recover certain sums of money which Henry Hall as guardian received and failed to account for. While many other items are referred to and discussed in the briefs, this litigation concerns only two items: the sum of $270, received by Henry Hall as guardian from Morgan Clark, a former guardian, and the value of 245 trees which it is claimed Layne appropriated to his own use with the consent of Henry Hall, and failed to pay for. In the original petition the value of these trees is fixed at $750. By the amended petition their value is fixed at $2,925.25. During the progress of the action F. H. Morell died, and the action was never reviewed. The chancellor held that plaintiff was entitled to recover one-half of the sum which Henry Hall received from Morgan Clark, and also one-half of the value of the timber, which he fixed at $750. Judgment was accordingly entered in favor of plaintiff for $510, with 6 per cent interest from July 23, 1900, until paid. The defendants, Henry Hall and James P. Layne, appeal, and plaintiff prosecutes a cross appeal.

At the time of the appointment and qualification of Henry Hall as guardian of Jacob and Alice Clark, William Akers was their guardian. During the year 1892 he entered into the following contract with the defendant, J. P. Layne:

"August 30, 1892.

"I hereby agree to sell J. P. Layne all down and dead and perishing timber on John Clark's heirs' land that his Guardian has control of on the Frog Branch, and Lackey Place for $1.00 per tree or log, and those that will make one log 50 cents, per log. Said Layne is to pay said money, or give note and security for said timber before it is moved off the place.

WILLIAM AKERS,
Guardian for Jacob and Alice Clark,
J. P. LAYNE."

At the time this contract was entered into, Jacob Clark was 17 years of age and Alice, 15. Henry Hall was their step-father, and together with their mother, had the custody of the children. According to the evidence for plaintiff, Akers, before entering into the above

contract, consulted with an attorney, who advised him that he had a right to sell the timber that was dead and down, and it was his duty to do so. After the contract was entered into Henry Hall persuaded Jacob Clark and one or two other young men to go upon the land in question and deaden the timber. They were instructed to do this work secretly, and not let the guardian, Akers, know of it. 245 valuable trees were deadened or belted. Soon after the trees were deadened Akers heard of it. He then went on the land and found Layne cutting the deadened trees and preparing to take them off the land. He stopped Layne from cutting the timber and offered to go with him and mark such trees as he had agreed to sell him. Layne refused to do this unless he could cut the 245 deadened trees, and the trees agreed to be sold were never marked. Thereupon Akers, the guardian, again sought legal advice, and was told to take the 245 deadened trees to the market and sell them for the best price he could get. He cut and hauled about three fifths of the timber to market. The remaining two-fifths, including 25 trees that were not cut, remained on the land. At this stage of the proceeding Henry Hall told Jacob Clark that it was best that Layne should have the timber in question under his contract, and if Layne did not take it, Akers would appropriate the timber to his own use or squander the money. To this end Hall advised Jacob to go to the county court and renounce Akers as his guardian and choose Hall in his place. Jacob consented, and at the same time signed his sister's name to the written request to the court to remove Akers and appoint Hall. The court did appoint Hall. Thereupon Layne, with the consent of the new guardian, Hall, took the timber in question under the contract which he had made with Akers as guardian. William Akers fixes the value of the timber taken by Layne at $2,925.92. E. S. Robinett received $176 for services in hauling the timber, and was paid on the basis of five cents a cube.

After Akers was superseded in the guardianship he, as next friend to the infants, instituted a suit in their names against Hall and Layne. He set up the contract between him and Layne and the fact that the trees had been deadened, and that Layne, in claiming the trees under the contract, had converted them unto his own use. He also charged that Hall and Layne had fraudulently conspired to procure his removal as guardian, and that

it was the intention of Layne to account for the timber on the basis of the prices named in the contract, and to make him as former guardian account for the actual value of the timber. After answer had been filed, Hall and Layne filed a request in writing from the infants that the suit be dismissed as far as they were concerned, and moved the court to dismiss in accordance with the request. This motion was sustained. Akers appealed. In discussing the question, this court said:

"The writing in question was but an agreement to sell, and passed no title to Layne until the timber was so marked that it could be readily identified. This case illustrates the necessity and importance of the rule stated, for in this case the parties promptly disagreed as to what trees were included in the writing or contract, and besides this the writing, even if it was a contract, ought not to be enforced against the infants. It would be a fraud upon their rights to do so whether appellant intended to sell the 245 trees or not.

"For the errors indicated the judgment of the court below is reversed and cause remanded with directions to set aside the order dismissing the action as to the infants, and to ascertain the value of the timber in controversy, and to allow appellant reasonable compensation for the labor and expense, if any, which he, in apparent good faith, incurred in preparing the timber for market, and by proper orders and judgment protect and guard the rights of the infants, and for further proceedings consistent with this opinion." Clark, &c. v. Layne, &c., 97 Ky., 290.

On the return of the case Akers' claim for compensation for labor performed and services rendered in marking the timber was compromised by the payment of $200, but it appears that this money was paid out of the wards' estate. No further proceedings were taken by the infants in that action.

For defendants Layne testified that he took the timber off the land under the contract in question; that he took no timber that was not belted or deadened. He did not remember the number of trees. On March 31, 1893, he executed a note to Jacob Clark and Alice Clark in the sum of $149.84 for timber bought of William Akers, guardian, and the administrator of John Clark, deceased, This note he paid. He never paid any money to William Akers, but paid it to Henry Hall. The timber which he

bought from Akers was not worth any more than he paid for it. He paid the market price for the timber.

Henry Hall testified that he was guardian at the time that Layne moved the timber, and helped him to haul it. Plaintiff, Jacob Clark, also helped. On cross-examination, witness stated that Squire Akers had told him that he could not handle the timber unless it was deadened, and thereupon he told Jake that the only way he could cut the timber was to deaden it. He told Jake that he could get Robert Gibson to help. Akers knew that the timber was deadened, and never objected to it. Witness himself applied to the county court to have Akers removed. The timber that was taken was pretty good sized timber. When he became guardian he never changed the contract, but permitted Layne to go on and take the timber. Did not know whether or not the particular purpose of having Layne removed was to enable Layne to get the timber. Mr. Layne did not pay the money to him, but he paid some to Bummer Friend and paid some taxes.

For defendants it is insisted that Hall is not liable for the value of the timber taken by Layne because none of the proceeds of the sale came into his hands. As held on the appeal in the case of Clark v. Layne, *supra,* the title to the trees that were deadened for the purpose of making the contract effective as to them did not pass under the contract which Akers as guardian made with Layne. Akers therefore acted with proper care and prudence in preventing Layne from taking that portion of the timber. At the time Akers was superseded, he was endeavoring to dispose of the deadened timber on the best possible terms. The evidence shows that Hall induced Jacob Clark and others to deaden the timber so that it would be covered by the contract in question Akers' conduct in the matter shows that he did not consent to this. Not being able to get Akers' consent, Hall persuaded Jacob Clark to institute proceedings in the county court for the purpose of having Akers removed and Hall appointed in his place. The plan was carried into effect. Thereupon Hall not only let Layne take the timber in question, but actually assisted in hauling the timber. A guardian in the management of his ward's estate should act in good faith and with the same prudence and discretion that an ordinarily prudent man is accustomed to exercise in the management of his own affairs. Harris, &c. v. Berry, 82 Ky., 137. Here Hall was not

only guilty of gross neglect in the management of the estate of his wards, but he actively participated in the wrong by which their estate was plundered. That being true, he is liable; Boaz's Admr. v. Milliken, &c., 83 Ky., 634; and Layne, who actually profited by the illegal transaction, is not only liable individually, but on Hall's bond as surety. Nor is Layne's liability affected by the fact that plaintiff permitted the action to abate as to Morell, the other surety. Davis v. Auxier, 19 Ky. L. Rep., 719.

Defendants insist that the value of the timber was fixed too high, while plaintiff contends that the judgment on this item should have been for a much greater amount. While Akers does fix the value of the timber taken at a sum greatly in excess of that fixed by the chancellor, yet Robinett testifies that he received $176 for hauling the timber, and that he was paid on the basis of five cents a cube. It is also apparent from the record that he hauled nearly three-fifths of the timber. This being true, the quantity of the timber fixed by Akers could not have been as great as he says. As plaintiff, when this suit was first brought, only asked for $750 for the timber cut and removed, and his evidence supports that valuation, and as the evidence for defendants does not satisfactorily show that its value was any less than that sum, we see no reason to disturb the finding of the chancellor on this question. Nor do we think that defendants should have any credit for the $149 claimed by Layne to have been paid to Hall. In the absence of evidence to the contrary, it is apparent that this was sufficient to cover only the timber taken in addition to the trees that were deadened.

Plaintiff insists that the judgment is erroneous in not awarding him the entire value of the trees, or the sum of $750. In this connection he argues that he and his sister inherited from their father the land from which the timber was cut. The trees cut were a part of the realty, and his sister having died in infancy and without issue, the whole of the land descended to him. Kentucky Statutes, Section 1401. And as no title to the timber in question passed by virtue of the contract of sale, it must be treated as realty. The timber, however, was cut in the lifetime of his sister. Having been cut by Layne and disposed of, there was left in her only the right to recover one-half the value thereof. This right of action was not real estate, but on her death vested in her ad-

ministrator. The proceeds of any recovery would be personal property and subject to the laws of descent governing that character of property. It follows, therefore, that plaintiff is entitled to recover only one-half of the value of the timber.

Judgment affirmed on original and cross appeals.