## National Surety Co. v. McNeill's Guardian et al.

(Decided Dec. 1, 1933.)

510

J. D. MOCQUOT for appellant.

M. B. HOLIFIELD and HOLIFIELD, GARDNER & McDONALD for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

A demurrer having been sustained to the answer of the appellant, National Surety Company, a defendant below, and it having declined to plead further, judgment was rendered against it and its codefendant, Mary Mc-Neill, in favor of the appellees, who were plaintiffs below, in the sum of $4,000, with interest from April 13, 1929, until paid, subject to certain credits allowed by the court which are not questioned on this appeal and which will not be further noticed. From the judgment so entered, this appeal is prosecuted.

The petition averred that on March 11, 1929, Mary McNeill was duly appointed guardian for her four infant children, Charlie, Mary, Kathryn, and James Mc-Neill, and that she qualified as such, with the appellant, National Surety Company, as the surety on her guardian's bond, it being in the penal sum of $4,000; that on April 27, 1932, Mary McNeill was duly removed as guardian of her children, and the appellee Katie Mc-Neill was appointed guardian in her place; that on March 12, 1929, there came into the hands of Mary McNeill, as guardian for her wards, the sum of $4,-077.50; that while acting as such guardian she at no

time expended any part of said sum for her wards or any of them; that Mary McNeill failed to file an inventory of the estate of her wards which came into her hands and failed to file settlement of her accounts as guardian within sixty days after the expiration of a year from her appointment as such guardian; that she failed to invest or to make any attempt to invest any of the funds which came into her hands as guardian, and that, after her removal as guardian and after demand had been made upon her by her successor, she failed and refused to pay over to such successor the $4,077.50, or any interest thereon. Judgment was prayed against Mary McNeill and her bondsman for the sum of $4,077.50 together with interest from the 12th day of March, 1929. Mary McNeill made no defense to this suit. By its answer, her surety, the National Surety Company, admitted that its principal, Mary McNeill, did not file an inventory of the estate or make a settlement of that estate. It then alleged that the $4,077.50 received by Mary McNeill for her wards was part of a check of an insurance company for $4,530.54, proceeds of a certain life insurance policy on the life of Charles McNeill, the father of said wards and the husband of said Mary McNeill; that the excess over the $4,077.50 belonged to Mary McNeill individually; that on April 13, 1929, she deposited this check in the Hickman Bank & Trust Company to the credit of "Mary McNeill, Gdn."; that on the 11th day of May, 1929, she withdrew from this account the sum of $453, her portion of the same, leaving on deposit in this account the sum of $4,077.54, which was the amount referred to in the petition and which belonged to her wards; that, at the time Mary McNeill deposited this check in the Hickman Bank & Trust Company, it was regarded generally as and was in fact a good, safe, and solvent bank; that there was nothing in the way its business was being carried on to put Mary McNeill or the public generally on notice that it was anything but a good, safe and solvent bank; that she deposited the funds of her wards in the bank, believing that it was a good, safe, and solvent bank, and she so deposited the funds to the end that they could be in a condition where they could be invested by her as guardian in such investments as allowed by the law of the state of Kentucky; that the subsequent loss of the funds of her wards was without fault on her part and one for which she was not liable; that

on the 30th day of December, 1929, the Hickman Bank
& Trust Company placed its affairs in the hands of the
banking commissioner of the state of Kentucky for
liquidation, and that it has since been unable to pay its
depositors or the deposit of Mary McNeill, and it is for
that reason that she was and is unable to pay over to
the present guardian of her wards the funds so de-
posited by her in this bank.

The question presented on this appeal is whether or
not this answer alleged facts excusing Mary McNeill as
guardian from paying over to her successor the estate
of her wards on demand being made upon her for the
same, and whether the court could award interest on the
penal sum in the bond from any date anterior to that of
the judgment. Five alleged breaches of the guardian's
bond are set up in the petition: (a) The mingling by
the guardian in the bank deposit of her own funds with
those of the wards; (b) the depositing of the wards'
funds in the name of "Mary McNeill, Gdn."; (c) fail-
ure of the guardian to file an inventory; (d) failure
of the guardian to make a settlement; and (e) the
failure of the guardian to invest the funds of the wards
before the bank in which they were deposited closed.
Save as to the last alleged breach, the answer makes no
issue with the allegations of the petition. Addressing
ourselves to a consideration of these alleged breaches,
we find that Mary McNeill received as proceeds of an
insurance policy, of which she and her wards were bene-
ficiaries, a check of the insurance company for $4,-
530.54, of which $453 belonged to her and the rest to
her wards. She deposited this in the name of "Mary
McNeill, Gdn.," on April 13, 1929, and withdrew her
portion of the same on May 11, 1929. The deposit of
the fund in the name of "Mary McNeill, Gdn.," did not,
eliminating for the moment the fact that part of the
check belonged to her, constitute a conversion of the
fund to her own use, as argued by the appellees. They
contend that such a deposit was an actual deposit of the
fund "to herself and no one else, and she individually
established the relationship of debtor and creditor be-
tween the bank and herself individually," to quote from
their brief. They argue that "Gdn." means nothing,
but, even if it does mean "Guardian," such words after
"Mary McNeill" on the books of the bank are merely
descriptio personæ, and hence the account was an indi-

vidual and not a fiduciary one. While the authorities are not in entire accord, the weight of authority appears to be against this contention of the appellees as may be seen from an examination of them appended to the text in 5 Michie on Banks and Banking, p. 120, et seq. But however that may be, we regard the question as settled in this state by the case of Mitchell v. First National Bank of Hopkinsville, 203 Ky. 770, 263 S. W. 15, 16. In that case, G. L. Campbell, acting as agent for Mitchell, sold some land belonging to the latter and in part payment therefor took a check payable to "G. L. Campbell, Agt. or bearer." This check, Campbell deposited with the First National Bank of Hopkinsville in his own name and later withdrew the deposit for his individual uses. Later, Mitchell sued the bank for the amount of the check, and it was held that he could recover. We said:

"The sole question in this case is: What was the effect of the expression 'Agt.' written in the face of this check, immediately after Campbell's name. As we see it, that expression in that check meant the same thing to appellee that a red flag waved beside a railroad track means to the engineer of an approaching train, or that the sound of a distant fog horn means to the befogged mariner at sea. It meant 'danger ahead.'

" 'The fact that the instrument on its face is made payable to a person in his fiduciary capacity is notice that the payee is acting in such capacity and that he can only give title or deal with such instrument for the benefit of the person whom he represents.' Eaton & Gilbert on Commercial Paper, 370.

" 'Agt.' in this check was notice to appellee that possibly this money was impressed with a trust and the bank should have inquired as to the nature thereof. * * *

"Appellee stoutly insists that the expression 'agt.' was only descriptio personæ, and that might be true of some such expressions as we frequently use, e. g. 'Dr. Smith,' 'Rev. Jones,' 'Judge Campbell,' 'Esquire Brown,' but it would be rather unusual to see those or other men referred to as 'Agent Smith,' 'Guardian Jones,' 'Trustee Campbell,' or 'Executor Brown.' "

As the letters "Agt." in this Mitchell Case were held equivalent to "Agent," it is impossible to understand why the letters "Gdn." in the instant case should not be held equivalent to "Guardian." In fact, that is the common sense solution of the question, for there could hardly be found an intelligent person who would not instantly know on being confronted with the words "Mary McNeill, Gdn.," that what was meant thereby was "Mary McNeill, Guardian." And since in the Mitchell Case a check payable to "Campbell, Agt.," was held to be payable to him in a fiduciary capacity, it equally follows that an account at the bank in the name of "Mary McNeill, Guardian," is no individual account, but a fiduciary account, and the deposit by Mary McNeill of the funds of her wards in such an account was no breach of her guardian's bond. Is the conclusion changed by the fact that at the time this account was opened a part of the check deposited belonged to Mary McNeill individually? Under the facts and circumstances of this case, we think not. The check was for a lump sum. There was no practical way of splitting it up save by depositing it in some account, waiting for it to clear, and then to divide the proceeds amongst those entitled thereto. Presumably this check was a foreign one—or at least drawn on some bank remote from Fulton county where Mary McNeill lived and where the check was deposited, for it was the proceeds of life insurance. It would take an appreciable time for the check to be forwarded for payment and its proceeds made available for checking purposes by the depositor. Mary McNeill did not deposit the check to her own individual account, as we have seen, but established a fiduciary account. Within a reasonable time after the deposit, making allowance for the need of the check to clear, she withdrew her portion of the check, leaving the balance belonging to the wards untouched and in a fiduciary account. It is difficult to see exactly what else Mary McNeill could have done under the circumstances and yet protected the wards as she did by having their money at all times in a fiduciary account. If there was any technical conversion of the wards' money during the time the check cleared, there was a prompt restoration of the proper status on May 11, 1929, when Mary McNeill withdrew her portion of the fund. If there had been a breach of her bond when the check was deposited, the breach was made good on May 11th. For these

reasons, we are persuaded that the appellant is not responsible in the instant case for the manner in which the deposit here was made. Nor do we think that the failure of Mary McNeill to file the inventory of her wards' estate or make a settlement thereof warrants the relief here sought against her surety, for the loss of the fund, which is the subject-matter of appellees' complaint, was not caused by the failure either to file an inventory or to make a settlement.

This leaves for consideration the alleged breach of the guardian's duties arising out of her failure to invest the funds of her wards during the period between their deposit in April, 1929, and the closing of the bank on December 30, 1929. It will be remembered that the answer of the appellant is entirely silent as to any reason actuating the guardian in her failure to invest the funds during this period. All we have is the bare allegation that she deposited this fund in April, left it in bank until December 30, 1929, and the bank then failed.

The appellant contends that the rule to measure the guardian's conduct by in this case is the one so often laid down to the effect that a guardian must act in good faith towards his ward and must exercise that prudence which an ordinarily prudent man is accustomed to exercise in the management of his own business affairs. See Harris et al. v. Berry, 82 Ky. 137; Bohn v. Bohn's Guardian, 229 Ky. 608, 17 S. W. (2d) 712; Layne v. Clark, 152 Ky. 310, 153 S. W. 437. It must be remembered, however, that a guardian is under the duty to invest his ward's estate and in the character of securities allowed by section 4706 of the Statutes. Now while it is true that a guardian may, in the absence of statute, make a temporary deposit of his ward's funds in a bank reasonably believed to be solvent while he is using such funds for legitimate current expenses or he is seeking an investment, yet after all a deposit on open account is, in its last analysis, an unsecured loan to the bank and one usually, as here, not bearing interest, and, if it ceases to be temporary in character as above described, it is an unauthorized loan. See 5 Michie on Banks and Banking, 188 et seq. See and compare Williams v. Rogers, 14 Bush, 776; Burnam v. Commonwealth, 228 Ky. 410, 15 S. W. (2d) 256. There is no showing in the instant case that the funds of the ward

were kept on hand for current expenses. There is no showing that the guardian was seeking an investment. There is no showing that the guardian was deterred from making an investment by unsettled economic conditions. We have nothing but a deposit in April in a bank believed then to be solvent and a loss of the fund on December 30th following, no explanation being offered as to the reasons for the guardian's nonaction in the meantime. Under such facts and circumstances, the deposit ceased to be temporary within the meaning of that word as above described and in effect became an unsecured non interest bearing loan to the bank, a character of investment not authorized by section 4706 of the Statutes. Had the guardian invested these funds as allowed by section 4706 of the Statutes and managed his investments according to the rule of conduct the appellant here invokes and the fund had then been lost without fault on the guardian's part, there would have been no breach of the guardian's bond. But that is not this case. In effect, the guardian made a use of her wards' funds not authorized by the statute and for which she offers no excuse or reason. The fund being lost because of her act, she and her surety are liable for the same.

There yet remains for decision whether or not the lower court had power to award interest on the penal sum of the bond from a date anterior to that of the judgment. That it did have such power is settled by the case of Carter v. Thorn, 18 B. Mon. 613. It was there said:

"The only question that we will consider in this case, is the extent of the liability of the sureties in a guardian's bond, executed in the year 1836. The penalty of the bond is one thousand dollars, and the sum due by the guardian to his ward when he arrived at the age of twenty-one exceeded, very considerably, the amount of the penalty.

"In the case of Woods v. Commonwealth ex rel. Pennington's Heirs, 8 B. Mon. 112, it was decided, that in an action upon a penal bond against sureties, the recovery was limited to the penalty of the bond.

"In the subsequent case of Hughes' Adm'r v. Wickliffe, 11 B. Mon. 202, on a review of all the au-

thorities upon the question, the previous decision was approved, but interest on the penalty was allowed from the time that a breach of the condition of the bond had occurred.

"Upon a breach of the condition of a penal bond, the penalty becomes, in law, a debt due, and the obligors can discharge themselves from all liability upon the bond, where the damages resulting from the breach of the condition exceeded the penalty, by the payment of the penalty alone.

"Inasmuch, however, as the penalty is due so soon as the condition is broken, it carries interest as a matter of law, from that time until it is paid, and where, as in this case, the actual damages resulting from the breach of the condition, exceed the penalty with the interest from the time of the breach, the sureties in the bond should be required to pay interest upon the penalty from that time."

Applying the rule thus laid down to the facts of this case, we are of the opinion that interest should run on the penal sum of the bond from the date when the loss of the funds of the wards occurred, and that was December 30, 1929. The judgment of the lower court awarded interest on this penal sum from April 13, 1929, and hence to that extent is erroneous. It is therefore reversed, with instructions to modify the judgment herein appealed from as herein indicated as to the interest, and then, as so modified, to re-enter it. Cf. Security Benefit Ass'n v. Kibby, 220 Ky. 330, 295 S. W. 164.

Whole court sitting.