STATE *ex rel.* W. H. BALLARD, *Admr. v.* J. A. THORN, *Guardian, etc., et al.*

(No. 8158)

Submitted May 7, 1935. Decided May 28, 1935.

*Samuel Solins,* for appellant.
*Crockett, Tucker & Tutwiler,* for appellees.

HATCHER, JUDGE:

Plaintiff, as administrator of Joe Page, an infant (deceased), seeks to recover from the infant's guardian and his bondsman, certain guardianship money allegedly mishandled. A commissioner of the circuit court reported in favor of the plaintiff as to a loan by the guardian of $675.00 and the interest ($79.29) thereon. The court sustained exceptions to the report as to the principal, and found against the guardian only as to the item of interest. The plaintiff appeals.

The loan was made in August, 1927, to Moses Hyman, who executed a promissory note due in six months, endorsed by G. Hyman & Sons. Interest was paid in advance. At the expiration of six months a like renewal note was executed, and the interest again paid in advance. The guardian testified that when the second note expired (August, 1928) he agreed with Hyman that the loan should continue on a yearly basis, interest to be payable at the end of each year; and that he thought he had taken a note from Hyman evidencing the new agreement. No such note was produced, and thereafter the guardian had no further dealings with Hyman in reference to the loan.

In December, 1929, a judgment for $3,400.00 was taken against Hyman by another creditor and was docketed January 10, 1930. Two more judgments by other creditors for substantial amounts were taken and docketed in June, 1930. Both Moses Hyman and G. Hyman & Sons were adjudicated bankrupts in July, 1930, with more than two hundred creditors, and their estates paid on the guardianship loan only $16.06.

The businessmen of the section wherein these transactions

occurred generally considered the Hymans financially sound in 1927-8. At least one creditor (who took the judgment in December, 1929) became apprehensive of their solvency the latter part of 1929, and in the early part of 1930 the business-men generally had grown suspicious of the stability of the Hyman enterprises. The guardian himself learned in April, 1930, that the Hymans were in financial difficulties; yet he made no effort even then to salvage any part of his ward's money. After 1928—in his own language—he "did nothing." In fact, he resigned his guardianship in June, 1930, and moved to another state.

A guardian is not an insurer of his fiducial funds. 65 C. J., subject Trusts, sec. 561. In his management of the funds he is required to manifest only "the care, skill, prudence and diligence of an ordinarily prudent man engaged in similar affairs." Bogert, Trusts and Trustees, sec. 541. Accord: *King* v. *Talbot,* 40 N. Y. 76, 85-6; *Harris* v. *Berry,* 82 Ky. 137; Underhill, Trusts, Art. 40; Perry, Trusts (7th Ed.), sec. 401. He is even permitted now under some circumstances to make a loan on personal security, without leave of court. 28 C. J., subject Guardian and Ward, sec. 240. But when he does so, his course will be scrutinized closely by the court. *Davis* v. *Trust Co.,* 106 W. Va. 228, 233, 145 S. E. 588. "The first care of the law is the safety of the trust fund. Upon this truism depends every rule which has been made for the conduct of trustees." *In re Union Tr. Co.,* 86 Misc. 392, 149 N. Y. S. 324, 326. Prudence and diligence merely in making the loan will not satisfy the law. The guardian's diligence must be continuous. His line of duty must be strictly pursued. *Key* v. *Hughes,* 32 W. Va. 184, 9 S. E. 77. The law will not countenance a do-nothing fiduciary policy. "A fiduciary relation requires vigilance as well as honesty. A dead and sluggish calm—a supine negligence—is full of peril to the minor; it is often as fatal as positive dishonesty." Royer's Appeal, 11 Pa. St. 36, 41. Accord: Woerner, Guardianship, 199; 28 C. J., *supra,* sec. 213.

Counsel for the guardian propose that because only three of the many creditors of the Hymans are shown to have secured judgments prior to their bankruptcy, the guardian's

failure to do so does not fall below the conduct of the average business creditor. This proposition is without substance, because it does not appear that the other creditors did not have satisfactory security.

Counsel rely on *Windon* v. *Stewart*, 43 W. Va. 711, 28 S. E. 776, and concurrent cases. The effect of those decisions is that if loss occurs from a guardianship loan and the loss is attributable merely to the bad judgment of a faithful and prudent guardian, he is not liable for the loss. Conceding requisite "good faith and sound discretion" in lending .the ward's money, where is any further attention to the loan? The guardian made no attempt to collect either principal or interest after August, 1928. During the two years (almost) which followed before the Hyman debacle, he (apparently) made no inquiry about the Hymans' financial standing. He waited for voluntary payment of principal and interest. He waited for voluntary information about his debtor. He was passive where the law requires activity. He was indifferent where the law requires diligence. Ordinary diligence would have demanded payment of interest and renewal of the note in August, 1929. Ordinary care would have been disturbed about the non-payment of the interest. When so many established fortunes were failing during 1929-30, ordinary vigilance would have questioned the security of the Hyman fortunes. *O'Dell* v. *Young*, 1 McNull Eq. (S. C.) 155-6.

The circumstances herein warrant the presumption "as a matter of fact that the loss resulted from negligence and dereliction of duty on the part of the guardian, and he should be charged with the debt." *Roush* v. *Griffith*, 65 W. Va. 753, 65 S. E. 168. Accord: *Webber's Estate*, 133 Pa. 338, 19 A. 403.

The finding of the circuit court as to the item of interest ($79.29) is affirmed; the adjudication as to the principal and the balance of the interest thereon from August 20, 1928, until paid is reversed and the cause remanded.

*Affirmed in part; reversed in part; remanded.*