FRANK T. HINES,

ADMINISTRATOR VETERANS' ADMINISTRATION

*vs.*

EDMUND J. AYOTTE,

GUARDIAN OF WALTER J. AYOTTE.

Aroostook.　　Opinion, February 9, 1937.

*C. M. Fitzgerald,* for appellant.
*Parker P. Burleigh*
*Pattangall, Williamson & Birkenwald,* for appellee.

104

Barnes, J.   This case comes up on exceptions by appellant, as Administrator of the Veterans' Administration, to rulings of the Supreme Court of Probate of Maine, arising in litigation over the correctness of an account of the guardian, which was approved and allowed by the Probate Court.

From a time prior to April 12, 1921, to June 6, 1935, appellee, as guardian of Walter J. Ayotte, an incompetent beneficiary of the Veterans' Administration, a resident of Aroostook County, Maine, received and accounted to the Probate Court for funds of his ward.

From first to ninth account, filed January 10, 1934, the guardian reported as on deposit in the interest-bearing, savings department of the Van Buren Trust Company an annually increasing amount which reached the sum of $12,125.56, the amount reported in the ninth and tenth accounts as "tied up."

All accounts to and including the eighth, filed January 5, 1933, report the receipt of interest on deposits in savings departments of banks.

The characterization of deposit in a bank as "tied up," following the order to close the banks, issued by the bank commissioner, on March 4, 1933, is well understood by citizens of this state to mean unavailable at date of such closing, and probably subject to discount.

In his eleventh account as guardian the appellee included the following prayer:

"Your accountant from time to time, in his capacity as Guardian of Walter J. Ayotte, deposited funds belonging to his said ward, in the Van Buren Trust Company of Van Buren, Maine, in the name of 'Edmund Ayotte, Guardian of Walter Ayotte.' On March 4th, 1933, the Van Buren Trust Company was closed by the State Bank Commissioner and is now in receivership. Your accountant proved his claim before the Commissioners appointed, asking that this claim be allowed as a preferred claim, which claim was disallowed. An appeal was taken and the Comissioners findings were confirmed. He has

done everything in his power to protect his said claim. All of these deposits were made in good faith, your accountant believing the said bank to be in a good, sound financial condition, at the time of making such deposits. Your accountant now believes that said deposit is of no value and asks to be allowed to charge off said asset, be relieved of responsibility therefor, and take a loss of $12,125.56."

Decree of the court on the eleventh account was made at the July Term, and reads as follows:

"STATE OF MAINE

AROOSTOOK, ss.

At a Probate Court held at Van Buren in and for the County of Aroostook, on the third Tuesday of July in the year of our Lord one thousand nine hundred and thirty-five,

NOTICE having been given pursuant to the Order of Court on the foregoing account, and the same with the vouchers produced having been examined by the Court, and the said accountant having made oath thereto, and it appearing that said account is just and true, it is decreed that the same be allowed and recorded.

Ira G. Hersey, Judge of Probate"

and from this decree appeal was duly taken, by the appellant as an administrative officer or agent of the United States Veterans' Bureau. U. S. Statutes, U. S. C. C. Edition, Title 38, Sec. 425.

The position taken by the exceptant is that the appellee by depositing and leaving for a period of years, funds of his ward in the savings department of the Van Buren Trust Company did not make such investment of funds as shall protect a guardian from personal liability for depreciation of such funds by reason of the insolvency of the bank.

Before the time when the Uniform Veterans' Guardianship Act, P. L. of Maine, 1929, Chap. 31, R. S., Chap. 81, became effective, express provision for investment of his ward's funds by a guardian may be found only in R. S., Chap. 80, Sec. 22, which reads as follows:

"On petition of the guardian or any party interested, the judge, with or without notice to other persons interested, as he deems necessary, may authorize or require the guardian to sell or transfer any personal property held by him as guardian, or any pews or interest in pews, belonging to such estate, as goods and chattels, and to invest the proceeds of such sale, and also all other moneys in his hands, in real estate, or in any other manner most for the interest of all concerned; and may make such further order, and give such directions, as the case requires, for managing, investing, and disposing of the effects in the hands of a guardian, or for buying in any particular estate, remainder, reversion, mortgage, or other incumbrance upon real estate belonging to the ward."

Subsequent to effective date of Veterans' Guardianship Act, *supra*, a further provision reads: "Every guardian shall invest the funds of the estate in such manner or in such securities, in which the guardian has no interest, as allowed by law or approved by the court." R. S., Chap. 81, Sec. 12.

Within this state then the money of a ward must be invested "in real estate, or in any other manner most for the interest of all concerned."

Security of the investment, availability as need arises, and the rate of return are considerations governing a guardian.

First and most important is the probability of security of the investment, and on this phase of the case the guardian and the Judge of Probate knew that the law which provided for the security of deposits in the savings departments of trust companies, at the time these deposits were made read as follows: "Every trust company soliciting or receiving savings deposits . . . shall segregate and set apart and at all times keep on hand so segregated and set apart, assets at least equal to the aggregate amount of such deposits . . . ."

"Such assets so segregated and set apart shall be held in trust for the security and payment of such deposits . . . ." R. S. 1930, Chap. 57, Secs. 89, 90.

It is true that the guardian may not be relieved of responsibility if without inquiry he deposits funds of his ward in a bank then insolvent or of questionable soundness.

But it would be unjust and inequitable to require guardians to deposit the funds belonging to their wards in banks at their own or their bondsmen's peril.

Such a rule would impose unreasonable responsibilities upon them and prevent prudent business men from assuming such responsibilities.

The true rule, expressed by a unanimity of both federal and state authorities is well stated in 12 R. C. L., p. 1131: "No duty is more clearly imposed by the very nature and purpose of a guardianship than to invest the ward's funds in such a manner as to produce an income, and unless the statute expressly requires it, the guardian can make such investments without an order of court . . . . In making investments the guardian must act in absolute good faith, and with reasonable diligence to insure the safety of the investment.

"The motto 'safety first' applies nowhere more strongly than in the investment of trust funds . . . in investing trust funds the element of speculation and that of favoritism are alike forbidden. On the other hand skilled financiers cannot usually be obtained as guardians ; the office is very often a labor of love, and if the rule of prudent investment were applied too strictly, injustice might often be done, and ordinary persons would be unwilling to accept the responsibility. Only such care as may be expected from honest and faithful men of reasonable intelligence should be required."

The rule in Maine is expressed in *Emery* v. *Batchelder*, 78 Me., 233, 241, 3 A., 733, 737, adopting the expression of the Massachusetts court, 9 Pick., 461 ; "All that can be required of a trustee to invest, is, that he shall conduct himself faithfully and exercise a sound discretion. He is to observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of the capital to be invested." See also *Mattocks* v. *Moulton*, 84 Me., 545, 24 A., 1004 ; *Moore, Appellant*, 112 Me., 121, 90 A., 1088, 1089.

It is not argued that the deposit of $4442.97 in the savings department of the bank prior to August, 1924, was not justified, nor that the return expected and for years realized was not satisfactory.

With the safeguard of sound assets, under the statute, segregated to assure the security of "savings deposits" in trust companies, and in reliance upon the surveillance of the department of banking of the state, it seems unquestionable that a guardian was justified in considering such a deposit as a safe investment.

No evidence was introduced that anyone was apprehensive of loss on deposits in this bank until the closing of all banks in 1933. A trustee would have learned, upon inquiry among men interested to know of the ability of trust companies to pay deposits in full, during the period under discussion here, that their reputation was generally good.

No evidence appears that the Van Buren Trust Company was an exception.

The diligent, discreet and prudent investor of trust funds should be held harmless when, under the circumstances of this case, insolvency of the bank occurs.

Moreover, at intervals, this guardian filed for scrutiny and allowance eight accounts of the discharge of his trust, and upon each received the approval of the Probate Court.

He had the sanction of the Probate Court upon his investments, for as this Court has said in *Moore, Appellant*, supra; "To investigate the character of investments upon the allowance of a guardian's account is clearly within the duty of the Probate Court:" and "It is well settled that decrees of probate courts, when not appealed from, in matters of probate, within the authority conferred upon them by law, are conclusive upon all persons and are not subject to collateral attack." *Chaplin* v. *National Surety Corporation,* 134 Me., 496, 185 A., 516.

Further, under the Uniform Veterans' Guardianship Act, provision is made for furnishing the United States Veterans' Bureau a copy of each account as presented in probate court for settlement; as follows,

"Every guardian who shall receive on account of his ward any moneys from the bureau, shall file with the court annually on the anniversary date of the appointment, in addition to such other accounts as may be required by the court, a full, true, and accurate account in duplicate under oath of all

moneys so received by him, of all disbursements thereof, and showing the balance thereof in his hands at the date of such account and how invested. The court shall fix a time and place for the hearing on such account not less than fifteen days nor more than sixty days from the date of filing same and notice thereof shall be given by the register to the aforesaid bureau office not less than fourteen days prior to the date fixed for the hearing. Said notice of the return day shall be given in writing by mail post-paid to said bureau office, together with a copy of said account as filed." R. S., Chap. 81, Sec. 9.

And it is not contended that the Probate Court failed in its duty to notify the bureau and forward copies of accounts filed, as required by law.

If it be considered (a position which we do not take) that a deposit such as this guardian made is not an "investment," as the term is used in our statutes governing guardians, then it is noteworthy that between the parties to this suit correspondence had taken place relative to other investment of the funds in the trust company before the closing of the bank.

Exceptions were taken to the introduction of evidence regarding proposed investments.

The first exception arose during the direct examination of the guardian as here quoted:

"Q. Prior to the closing of the Van Buren Trust Company had you made plans to invest some of the money on deposit there?
A. Yes, sir.
Q. Tell the Court what plans you had made.
A. By putting in an application to loan money on real estate mortgages — first mortgages.
Q. Application to who?
A. To the Court, — to the Probate Court.
Q. Prior to making application to loan money on real estate mortgages had you had any other correspondence or conversations with the Veterans' Bureau in regard to investing?

Mr. Fitzgerald: I object.

The Court: State your objection.

Mr. Fitzgerald: I don't think it is material, your Honor, who he had correspondence with, or who he didn't.

The Court: You are charging this man with not using proper caution and good faith in investing the funds, and it seems to me if there is any correspondence he had with the party who now claims to be aggrieved, showing that whatever he did was at the time to their satisfaction, it would be proper.

Mr. Fitzgerald: The Veterans' Administration was not the— we maintain, they were not the guardian. This duty of investing was his entirely. If I had written to him and told him to steal the money and he come back and done it, he could not come into court and said I did that.

The Court: And you would not have very good standing if you came into court and found fault with his stealing, if you had advised him to.

Mr. Fitzgerald: That is true. This is the same situation now. (Immediately preceding question read by stenographer.)

The Court: He may answer that.
(Exception reserved.)

Q. What conversation did you have, or correspondence?

A. I was advised by a Veterans' Officer that Mr. Fitzgerald would be out. He sent Mr. Malcom Stoddard in his place, and told me that the money would be left in the Van Buren Trust and after January, 1933, that we would put the money in first mortgages.

The Court: The Malcom Stoddard you speak of is administrator at the Home?

Mr. Fitzgerald: He is the manager.

The Court: Manager of the Veterans' Bureau Facility?

Mr. Fitzgerald: Yes.

Q. Have you finished the answer?

A. He said that later on Mr. Fitzgerald would be up and would attend to the matter. (Letter, marked Appellee's Exhibit A. offered and admitted. Exception reserved) ...

Q. I show you Appellee's exhibit C, a letter marked, and ask you if that is a letter you received from Mr. Fitzgerald?

A. That is signed by him. . . . Yes, sir.

(Exhibit C. offered and admitted over objection. Exception reserved.)"

The exceptions are here treated as one.

The duties of the Federal Veterans' Bureau are numerous, the recipients of the bounty which it distributes are found in probably every county in the United States, and the authority of the Director of the Bureau is complete to include on his technical and administrative staff such officers, experts, inspectors and assistants as he shall prescribe.

He properly assumes the duty of scrutinizing the probate records in Maine, and his duty to enforce the provisions of the World War Veterans' Relief Act must be held to extend to counseling as to investment of the funds of a ward, under the act.

The appellant, as Administrator of the Veterans' Administration is apparently one of his regional assistants.

The testimony and exhibits objected to are clearly admissible, so far as pertinent to an examination of the good faith of the guardian. The letter, Exhibit A, addressed to and received by defendant, headed "Veterans' Administration, United States Veterans' Bureau," issued in Portland, Maine, on January 7, 1932, acknowledging guardian's letter of January 5, 1932, "relative to investing a portion of the funds of your ward in securities," closes as follows, "Before you actually invest this money, however, you should submit a list of the bonds to this office. If it is believed they are a safe investment, a petition will be prepared by this office for your signature requesting the Judge of Probate to authorize you to invest in the bonds.

It is, of course, considered a proper investment to leave money in the savings bank, provided the bank is considered safe and sound." and is signed "Harold F. Canning, Acting Regional Attorney."

Exhibit C, letter from the same office, under date of January 16, 1933 more than six weeks before the closing of the Van Buren Trust Company, reads:

"Mr. Edmund J. Áyotte                          Ayotte, Walter
   Van Buren, Maine                            C-368, 341

DEAR SIR:

This has reference to your communication of January 12, 1933 and petition enclosed in the above captioned case.

In view of the fact that the Administration does not favor investment of trust funds in mortgages on real estate, approval of the petition cannot be granted.

The undersigned contemplates a visit to Van Buren and vicinity sometime during this month and will see you personally in the matter.

Very truly yours,"

and is signed "C. M. Fitzgerald, Chief Attorney," counsel for plaintiff at bar.

We must hold, nothing to the contrary appearing, that the writers who signed these exhibits were authorized to make the findings and suggestions which the exhibits contain. This renders the letters admissible, notably the statement made fourteen months before the bank was closed: "It is, of course, considered a proper investment to leave the money in the savings bank, provided the bank is considered safe and sound," and the report of Malcom Stoddard that Mr. Fitzgerald "would attend to the matter," of investing in mortgages.

Argument of appellant that loss from failure of the guardian to withdraw the trust company deposit and make other investment should be restored by the guardian, regardless of the advice and suggestions of the agents of the Veterans' Administration, merits attention in passing. It is the position of the appellee that supervision of the activities of an incompetent veteran's guardian is required of the director. This can not be denied. Section 450, part (2) of the Federal statute above cited provides, so far as applicable to this case: "Whenever it appears that any guardian . . . is not, in the opinion of the director, properly executing the duties of his trust . . . then and in that event the director is hereby empowered by his duly authorized attorney to appear in the court which has appointed such fiduciary and make proper presentation of such matters to the court." The same attorney, undoubtedly so author-

ized, appeared in the Probate Court, took and prosecuted the appeal and has presented the case before this Court.

He does not deny furnishing the guardian with the information written in Exhibit A, and we can not agree that the guardian was not justified in awaiting further instructions relative to "properly executing the duties of his trust." The final authority in the federal department, through its chosen agent and attorney, with notice of the situation, as provided by law, by advice of attorney and by tacit approval sanctioned delay for fourteen months, and the loss complained of was suffered.

The conclusion seems irresistible that defendant, under the circumstances of the case, is not to be held personally responsible for loss consequent on his inability to change investments before the bank was closed.

In considering the many cases cited in support of plaintiff's argument on the law governing the points at issue here we find that the statutes of the several states are widely different, and hence many of the cases are distinguishable from the case at bar.

In many states controlling directions as to the sort of investments available to a guardian materially restrict the field of investments.

In the case, *U. S. Veterans' Bureau* v. *Riddle*, 186 Ark., 1071, 57 S. W. (2nd), 826, the statute, therein quoted, restricts the guardian to investing only "under the direction of the court," ours as noted is otherwise.

In *Wood's Estate* (Cal. 1911), 114 Pac., 992, the deposit was "an ordinary savings bank deposit," but drafts thereon could be made only upon checks countersigned by the bonding company.

In *National Surety Company* v. *McNeill's Guardian*, 251 Ky., 509, 65 S. W. (2nd), 721, 723; "there is no showing that the guardian was seeking an investment."

In *Bane* v. *Nicholson*, 203, N. C., 104, 164, S. E., 750, the guardian deposited, "on permanent (savings account) in a commercial bank, without security" at six per cent interest. But the statute demanded sufficient security and compound interest.

So it may be that if the statutes prescribing conditions of investment, and the security set up for deposit in savings institutions in

cases where the findings of the courts differ from ours, were studied such different results were arrived at under the mandate of applicable statutes.

We find no error on the part of the court below.

*Exceptions overruled.*
*Decree of the lower*
*court affirmed.*