Judith F. ANDERSON

v.

CAPE ELIZABETH SCHOOL BOARD,
et al.

Supreme Judicial Court of Maine.

Argued Jan. 16, 1984.

Decided March 6, 1984.

Donald F. Fontaine (orally), Sunenblick, Fontaine & Reben, Portland, for plaintiff.

Jensen, Baird, Gardner & Henry, Nicholas S. Nadzo (orally), Margaret S. Akar, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Plaintiff Judith F. Anderson commenced this action against the school board and officials of the Cape Elizabeth public school system alleging the breach of a teacher employment contract imposed by operation of law pursuant to 20–A M.R.S.A. § 13201 (1983).[1] She appeals from an order of the Superior Court (Cumberland County) granting summary judgment in favor of the defendants. We conclude that section 13201 does not impose a contract on the parties in this case, and therefore we deny the appeal.

The events relevant to this appeal span approximately two and one half school years. As a result of the dismissal of a fourth grade teacher, on December 20, 1977, plaintiff was hired by the superintendent as a substitute teacher for the remainder of

---

1. This provision was previously codified as 20 M.R.S.A. § 161(5) (1965), *repealed by* P.L.1981, ch. 693, § 1 (effective July 1, 1983).

the school year. In view of her status as a substitute teacher her selection was not presented to the board for approval although the chairman was informed that she had been retained. She was compensated on a per diem basis without fringe benefits according to the established policy for substitute teachers. In a letter to plaintiff dated February 28, 1978, the superintendent confirmed that she was guaranteed employment only for that school year and that the position would be advertised for the following year.

In August of 1978, the superintendent nominated plaintiff for a regular half-time teaching position in the fifth grade for the 1978–79 school year. The school board formally approved her nomination, and plaintiff received a one-year "Probationary Teacher's Employment Contract." She was paid half of a regular teacher's salary with fringe benefits and was formally evaluated during the year according to the procedure set forth in the teachers' collective bargaining agreement. On March 5, 1979, during that same school year, the superintendent informed plaintiff by letter that he had declined to nominate her for employment in the following year. Plaintiff's application for a different teaching position was denied in August of 1979.

As the school year began in the fall of 1979, plaintiff held no teaching position in the Cape Elizabeth school system. During the month of September she served as a substitute teacher for four days. At the beginning of October, the regular fifth and sixth grade teacher retired unexpectedly, and plaintiff was hired as a substitute to fill the position for the remainder of the school year. In a letter of agreement dated October 3, 1979 and signed by the plaintiff, the superintendent specified that he was employing her only for the remainder of that year, but that she would have an op-

portunity to apply for the position as a regular teacher in the coming year when it was advertised. Although plaintiff was never nominated or elected to this substitute position, the school board approved the superintendent's proposal to pay her the salary of a regular contract teacher with full fringe benefits through the end of the school year.

After concluding her substitute teaching, in the summer of 1980, plaintiff applied for three open teaching positions in the Cape Elizabeth school system. Her applications were denied and she did not teach in Cape Elizabeth during the 1980–81 school year. In September of 1981, plaintiff instituted this action against the defendants. She alleged in her complaint and on appeal that her cumulative employment as a long term substitute [2] and part time contract teacher from December 20, 1977 through December 19, 1979 fulfilled the probationary requirement of 20–A M.R.S.A. § 13201. She reasoned that at the end of the two year period, mid-way through her last year of teaching, a new two year contract arose by operation of section 13201. It is that contract which she contends the defendants breached by allowing her employment to terminate at the end of the 1979–80 school year without providing six months notice or an opportunity for hearing.[3]

Section 13201 specifies the procedure for the employment of regular teachers and provides in relevant part, as follows:

> The *superintendent shall nominate all teachers,* subject to such regulations governing salaries and qualifications of teachers as the school board shall make. *Upon the approval of nominations, by the school board, the superintendent may employ teachers so nominated and approved* for such terms as the superintendent may deem proper, subject to the approval of the school board.

---

**2.** We use this descriptive term as used by the parties but note that it has no statutory significance.

**3.** Plaintiff also alleged in count II of her complaint that the defendants deprived her of a

property right in continued employment with the school system after August 31, 1980 in violation of 42 U.S.C. § 1983. This claim is not being pressed on appeal.

*After a probationary period not to exceed 2 years, subsequent contracts* of duly certified teachers *shall be for not less than 2 years.* Unless a duly certified teacher receives written *notice* to the contrary at least *6 months before the terminal date of the contract,* the contract shall be extended automatically for one year and similarly in subsequent years.

(Emphasis added). The Superior Court ruled that under this statute a teacher may obtain probationary status only if first nominated by the superintendent and approved by the school board for a particular teaching position. Because neither of plaintiff's substitute teaching positions were subject to nomination and approval and because her approved part time position was for one year only, the court concluded that the probationary requirement had not been fulfilled. Accordingly, the court found that plaintiff did not have a continuing contract under section 13201. Without approving the analysis employed by the Superior Court, we conclude that summary judgment was appropriately granted in this case.

In determining the scope and meaning of section 13201 we are bound by its clear and unambiguous language. *Concord General Mutual Insurance Company v. Patrons-Oxford Mutual Insurance Company,* 411 A.2d 1017, 1020 (Me.1980). In the absence of any manifest legislative intent to the contrary, statutes must be construed in accordance with the natural import of the terms used without resort to subtle and forced constructions for the purpose of limiting or extending their operation. *In re Belgrade Shores, Inc.,* 359 A.2d 59, 62 (Me. 1976). The language of section 13201 is unambiguous: *"subsequent contracts"* entered into after completion of the probationary period *"shall be for not less than* two years." The statute establishes a dura-tional requirement for all *subsequent* employment contracts.[4] By its terms it does not impose a contract by operation of law automatically upon the expiration of two years of probationary service.

If we assume for the purpose of argument that plaintiff completed two years of probationary service on or about December 19, 1979, she still would be unable to recover from the defendants on these facts. Although she continued to teach after December 19, 1979, the defendants did not offer her a new contract after that date nor did she request one. She continued to teach for the remainder of the 1979–80 school year pursuant to a letter of agreement signed the previous October—two and one half months before the expiration of the assumed probationary period. Because there was no "subsequent contract," the defendant's action in allowing plaintiff's employment to terminate at the end of that school year, as agreed, does not give rise to any contractual liability.[5]

The entry is:

Judgment affirmed.

All concurring.

---

4. Section 13201 does not prohibit the award of a continuing contract prior to the expiration of the two year probationary term contemplated by the statute. We do not suggest that the protection afforded by the statute would be avoided if a school board purported to award a continuing contract under such circumstances.

5. We have no occasion to address the issues of whether the nomination and election procedures are prerequisite to obtaining probationary status, or whether a teacher may, under any circumstances, fulfill the two-year probationary requirement through substitute or part time teaching or any combination thereof.