**ESTATE OF PETER C.**

Supreme Judicial Court of Maine.
Argued Nov. 14, 1984.
Decided Feb. 22, 1985.

Bell & Geores, Michael A. Bell (orally), Lewiston, for plaintiff.

Paul H. Mills (orally), Farmington, for Guardian.

Jensen, Baird, Gardner & Henry, Donald A. Kopp (orally), Portland, for M.S.A.D. #58.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN, and SCOLNIK, JJ.

SCOLNIK, Justice.

■ Advocates for the Developmentally Disabled (ADD), a nonprofit organization authorized by law to pursue legal, administrative, and other remedies to ensure the welfare and protect the rights of the disabled,[1] appeals the order of the Probate Court (Franklin County) denying its petition for removal of Glenna Barden as guardian for Peter C.[2] On appeal ADD asserts that the Probate Court erred in three of its rulings: first, that the provision of the Maine Probate Code, 18–A M.R.S.A. § 5–311(c) (1981), barring a "facility or institution" housing incapacitated persons from serving as their guardian does not automatically bar its employees from being appointed guardian; second, that a Department of Human Services regulation of the licensing and functioning of those facilities does not control the probate judge's discretion in selection of a guardian to serve the best interests of the ward; and third, that Barden was not disabled from serving as Peter C.'s guardian by any conflict of interest. We reject ADD's contention of legal error in the first two rulings. We agree, however, that the facts of this case present a conflict between the interests of guardian and ward which requires Barden's removal as guardian. Accordingly, we reverse and remand with instructions to the Probate Court to grant the petition.

1. *See* 42 U.S.C.A. § 6012(a)(2)(A) (1983) and 22 M.R.S.A. § 3551 (1980).

2. Maine School Administrative District No. 58 (S.A.D. No. 58), which was permitted to intervene in the case below, filed briefs in and participated in oral argument before this court. Although S.A.D. No. 58 is responsible for the education of Peter C. under 20–A M.R.S.A. § 7202(5) (1983), that duty by itself does not

I.

The Maine Probate Code provides for removal of the guardian of an incapacitated person and appointment of a successor. 18–A M.R.S.A. § 5–307(a). It has been generally held that, where a statute enumerates grounds for removal, those are exclusive. *See* 39 C.J.S., *Guardian & Ward*, § 42 (1976). While the Maine Probate Code specifies certain guidelines for the qualifications of a guardian in 18–A M.R.S.A. § 5–311 it leaves the removal of the guardian largely to the Probate Court's discretion, to be exercised "in the best interests of the ward." 18–A M.R.S.A. § 5–307(a). The first question on appeal is whether 18–A M.R.S.A. § 5–311(c), by itself, controls that discretion in this case and requires Barden's removal as Peter C.'s guardian.

Section 5–311(c) states, "[a] facility or institution which is licensed under Title 22, sections 1817 and 7801 may not act as guardian of an incapacitated person who is a resident." The Strong Children's Home, where Peter C. lives, is licensed under the identified sections of Title 22. Thus the Home itself is disqualified from serving as his guardian. Barden is the sister of a one-half owner of the Home. As the original guardianship petition discloses, she is also the Home's Administrator. ADD contends that the legislative intent of section 5–311(c), that an institution housing an individual should not also be responsible for overseeing that person's rights and finances, can only be carried out if the phrase "facility or institution" is interpreted broadly to include employees of those institutions.

give rise to a right to intervene in controversies over who shall be Peter C.'s guardian. The school district has failed to demonstrate any particularized interest that permits it to be heard in this case. *See* M.R.Civ.P. 24; *Lund ex rel. Wilbur v. Pratt,* 308 A.2d 554, 560 (1973) ("All persons are to be made parties who are legally or beneficially interested in the subject matter and result of the suit").

ADD's reading of subsection (c) is not supported by an analysis of section 5–311, taken as a whole. That section clearly distinguishes "persons" from "institutions." For example, subsection (a) of section 5–311 provides: any competent *person or* suitable *institution* may be appointed guardian of an incapacitated person, *except as provided in subsection (c).* (Emphasis added) Similarly, subsection (b)(1) refers to "[t]he person or institution nominated in writing by the incapacitated person." Had the Legislature intended the statutory bar of section 5–311(c) to include both institutions and individuals, it would have said so. The Probate Court correctly followed the plain meaning of the section. *See Anderson v. Cape Elizabeth School Board,* 472 A.2d 419, 421 (Me.1984). Section 5–311(c) does not disqualify Barden from being Peter C.'s guardian.

## II.

Second, ADD asserts that the Probate Court must follow the directive of paragraph 6.H.3 of the "Regulations Governing the Licensing and Functioning of Intermediate Care Facilities for the Mentally Retarded" issued by the Department of Human Services, when it considers petitions for the removal of guardians. That regulation reads, in pertinent part, "[n]o home and no owner, administrator, employee or representative thereof or their relatives shall act as guardian, trustee or conservator for any resident of such home or any of such resident's property." Though we reach a result on the facts of this case that is consistent with the language of the regulation, we do not do so *because of* the regulation.

We see no reason to conclude that paragraph 6.H.3 and its companion regulations do more than their title indicates: govern the *licensing* and *functioning* of intermediate care *facilities.* They do not govern the appointment and removal of guardians. The statute providing for the promulgation of these regulations does not authorize regulations interpreting the Probate Code. *See* 22 M.R.S.A. § 1817. Nor are we directed to any other expression of legislative intent that the Department's licensing regulations control the Probate Court's discretion in selecting and removing guardians. Paragraph 6.H.3 does not, and could not, require that the Probate Court remove Glenna Barden from Peter C.'s guardianship.

## III.

Though neither 18–A M.R.S.A. § 5–311(c) nor Regulation 6.H.3 require that this petition be granted, the particular facts of this case disclose a conflict between the interests of guardian and ward that cannot be condoned. Barden's situation as both Administrator and sister of an owner of the institution where Peter C. lives puts in question her capacity for the absolute fidelity to Peter's interests that the law requires of a guardian. In this situation, the Probate Court's conclusion that her appointment was, nonetheless, in the best interests of Peter was an abuse of discretion.

Under the general common law rule, a guardian stands in a fiduciary relationship to his ward. *Ohio Cas. Ins. Co. v. Mallison,* 223 Or. 406, 354 P.2d 800, 802 (1960); *Ryder v. Ryder,* 322 Mass. 645, 79 N.E.2d 17 (1948); 39 C.J.S., *Guardian & Ward,* § 3 (1976). Maine follows the general rule. In *Appeal of Look,* 129 Me. 359, 362, 152 A. 84, 86 (1930), we stated that, "[t]he relationship between guardian and ward, even when quasi-parental, is that of trustee and cestui que trust." This rule was not abrogated by Maine's adoption of the Uniform Probate Code, 18–A M.R.S.A. §§ 1–101 to 8–401. In section 1–103 the Code requires that, "[u]nless displaced by the particular provisions of this Code, the principles of law and equity supplement its provisions." The common law rule thus guides the exercise of the Probate Court's discretion in deciding whether to remove a guardian.

■ The guardian's obligation not to place his own interests before those of the ward is paramount. "The confidence reposed in a guardian rests upon the undivided loyalty that the law expects and requires the guardian to give to his ward's interest." *In re Howard's Guardianship*, 24 P.2d 482, 484 (Cal.1933). For example, "[i]n making investments the guardian must act in absolute good faith...." *Hines v. Ayotte*, 135 Me. 103, 107, 189 A. 835, 838 (1937). "Where a guardian places himself in a position with respect to the estate which brings his interests in conflict with those of his ward, he should be discharged and his letters revoked." *In re Howard's Guardianship*, 24 P.2d at 486; *Robertson v. Epperson*, 78 Neb. 279, 110 N.W. 540 (1907). The Probate Code provides that, "if entitled to custody of his ward, [the Guardian of an incapacitated person] shall make provision for the care, comfort and maintenance of his ward and, whenever appropriate, arrange for his training and education." 18–A M.R.S.A. § 5–312(a)(2). Thus, the ward's person and education are no less entitled to the protection of the fiduciary obligation than is his property.

Though the Probate Court recognized the general rule that a guardian may not have interests that conflict with those of the ward, it determined that this case does not present such a conflict as would require Barden's removal. On the contrary, the conflict of interest here directly concerns the central feature of Peter C.'s guardianship: how he lives and how he is educated. His guardian's decisions on those matters must be made solely with Peter's interests in mind. Barden's position with the Home compels the conclusion that she has, at the very least, a sympathetic concern for the interests of her employer. Her position is made more untenable by the additional fact that she is the sister of a one-half owner of the Strong Children's Home. Here again, her loyalties are divided. Were a question to arise about the propriety of any aspect of Peter's care or education, his guardian would be required to act in his interest alone. If Barden was influenced by her family and employment ties, who would speak for Peter? It is not enough to say that she must resolve any conflict in favor of her ward. A fiduciary should not be in that position.

ADD's third contention on appeal highlights the potential problems. In 1979, the former owner/Administrator barred the S.A.D. No. 58 teaching staff from the Home. For three years, the "educational programming" required by 20–A M.R.S.A. §§ 7201, *et seq.*, was undertaken by Home employees. ADD has brought an administrative challenge to the adequacy both of the education Peter C. received from 1979 to 1982, and of the current program, which S.A.D. No. 58 conducts on the Home's premises. In her capacity as Administrator of the Home Glenna Barden testified in support of the school district at the hearing before the Department of Educational and Cultural Services. ADD's appeal from the adverse decision is still pending in Superior Court.

Following the Hearing Officer's decision, but without informing the Probate Court of the educational dispute, Barden petitioned for appointment as Peter C.'s guardian.[3] ADD here contends as it did at the hearing on the petition for removal, that her testimony at the administrative hearing created a conflict of interest that required her removal. The Probate Court concluded that,

> there is no evidence that her difference of opinion with ADD as to Peter's continued education is the result of a special interest arising out of her relationship with the Home rather than a difference of opinion arising out of her parental concern for Peter.

We cannot say that this conclusion is clearly erroneous. However, the dispute brings

---

**3.** ADD was not notified of the petition for guardianship, and did not participate in the hearing.

to light factors that illustrate the nature of the difficulties that the Probate Court was bound to perceive.

There is no guarantee that the current harmony between the Home and the school district will continue. Were a similar dispute to arise, Peter C. would be entitled to a guardian free of institutional loyalty who would be objectively able to decide which position inured to his educational best interests. More generally, he is entitled to a guardian whose vigilance in matters of his care and custody is uncompromised. In the present circumstances, the necessary assurance that the fiduciary will act solely in the interest of her ward is simply lacking.

Barden is "in a situation where [she] cannot now suitably protect [her] ward's interests." *In re Timperley's Guardianship*, 141 Neb. 604, 4 N.W.2d 603, 604 (1942). We would not permit such a conflict of interest in the management of the ward's property. It is just as unacceptable where the ward's care and education are concerned.

The entry is:

Judgment reversed.

Remanded to the Probate Court with instructions to grant the petition for removal of guardian.

All concurring.