1998 ME 55

**ESTATE OF Elinor M. WILDE.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 12, 1997.
Decided March 17, 1998.

---

William J. Sheils, Philip C. Hunt, Perkins, Thompson, Hinckley & Keddy, P.C., Portland, for Estate of William W. Wilde.

Richard P. LeBlanc, LeBlanc & Young, P.A., Portland, for Elinor Mitchell Wilde Trust.

Thomas B. Wheatley, Portland, for Estate of Elinor M. Wilde.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, LIPEZ and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] Taylor L. Wilde, the personal representative of the estate of William W. Wilde, appeals from the judgment of the Lincoln County Probate Court (*Berry, J.*) determining the amount of the debt owed by William's estate to the estate of Elinor M. Wilde. On appeal, William's estate contends that the court erred by applying an incorrect measure to calculate the damages arising from William's breach of his fiduciary duty. We agree and vacate the judgment.

[¶ 2] Elinor M. Wilde died testate in June of 1985. Her will was admitted to probate in the Lincoln County Probate Court and her husband, William W. Wilde, was appointed the personal representative of the estate. Complying in part with the terms of the will, William distributed certain real and tangible personal property to himself. The residue of the estate was distributable to the trustee of the Elinor M. Wilde Revocable Trust. The corpus of that trust was divided into two shares, the Marital Trust and the Family Trust.

[¶ 3] William did not distribute the share of the residuary allocable to the Family Trust to the trustee.[1] That share, consisting primarily of stock in Aetna, CIGNA, and Honeywell, was valued at $343,819.25 on the date of Elinor's death. Instead, William retained some of the assets, sold others, and commingled both the assets and the proceeds with his own personal assets. More than a decade after Elinor's death, shortly before his own death on November 10, 1995, William delivered cash, stocks, bonds, and securities valued at $403,555.00 to the successor trustee of the Revocable Trust for delivery to the Family Trust.

[¶ 4] The successor trustee then petitioned the Probate Court to compel an order of complete settlement of Elinor's estate. *See* 18–A M.R.S.A. § 3–1001 (1998). The personal representative of William's estate filed an accounting stating that, as of the date of William's death, his estate was accountable to the successor trustee for cash and securities having a value of $320,563.24. That accounting assumed that the inception assets had remained static over the preceding decade and therefore represented the difference between the value of the inception assets at William's death and the value of the assets previously turned over by William. The successor trustee objected to the ac-

---

1. The share of the trust·allocable to the Marital Trust is not at issue in this appeal.

counting, contending that the amount due was significantly higher. The trustee asserted that the damages should be determined not with reference to the increase in value of the inception assets, but by reference to the value that would have been attained had those assets been invested in an S & P 500 Index Fund throughout the decade.

[¶ 5] The dispute over the measure of damages was submitted to the court on stipulated facts and memoranda of law. The parties agreed on the value of the inception assets at the time of Elinor's death ($343,819.25), the value of the same assets at William's death ($724,118.24), the value of assets belatedly turned over to the trust by William ($403,555.00), the value of the inception assets at William's death had they been invested in an S & P 500 Index Fund ($1,080,280.00), and the value of those assets at William's death had they been managed by a prudent trustee ($860,000.00). The parties then asked the court to decide which of three measures of damages was correct as a matter of law and stipulated to the amount owed by William's estate under each measure. Specifically, the parties presented the following damage calculations to the court:

(1) the value of the trust if the inception assets had been retained without change, less the value of the assets actually delivered to the trustee ($724,118.24—403,555.00 = $320,563.24);

(2) the value of the trust if it had been managed by a prudent professional trustee in Portland, Maine, less the value of the assets actually delivered to the trustee ($860,000.00—$403,555.00 = $456,445.00);

(3) the value of the trust if the assets had been invested in an S & P 500 Index Fund less the value of the assets actu-

ally delivered to the trustee ($1,080,280.00—$403,555.00 = $676,725.00).

[¶ 6] The court concluded that damages should be measured by reference to the S & P 500 Index, which the court considered a "better 'harder' measure than that offered by certain 'unnamed professional trustees in Portland, Maine.'" Accordingly, the court entered judgment in the amount of $676,725.00 against William's estate. This appeal by William's estate followed.

■ [¶ 7] Whether the court applied the correct measure of damages is a question of law. Thus, we review the court's decision for errors of law. *See Estate of Hardy*, 609 A.2d 1162, 1163 (Me.1992). It is undisputed that William, as the personal representative of Elinor's estate, breached his fiduciary duty by failing to settle and distribute the estate pursuant to the terms of her probated will. *See* 18–A M.R.S.A. § 3–703(a) (1981).[2] That breach rendered him liable "to interested persons for damage or loss ... to the same extent as a trustee of an express trust." *Id.* § 3–712 (1998); *see also Estate of Stowell*, 595 A.2d 1022, 1025 (Me.1991).

■ [¶ 8] A trustee properly administers a trust only by complying with applicable standards of fiduciary care. In the management and investment of trust assets, a trustee is bound to "observe the standards ... that would be observed by a prudent person dealing with the property of another[.]" 18–A M.R.S.A. § 7–302(a) (1981), *repealed by* P.L.1995, ch. 525, § 2 (effective Jan. 1, 1997).[3] A trustee is required to exercise sound discretion in investing trust funds, considering income, distribution needs, preservation of capital and methods by which prudent people dispose of their own funds. *See Hines v. Ayotte*, 135 Me. 103, 189 A. 835 (1937).[4] When the trustee breaches his

---

**2.** The Legislature amended § 3–703(a) in 1995 and 1997. *See* P.L.1995, ch. 525, § 1; P.L.1997, ch. 73, §§ 1–2. Neither of the amendments altered the general rule that a personal representative is under a duty to settle and distribute an estate pursuant to the terms of a probated will. *See* 18–A M.R.S.A. § 3–703(a) (1998).

**3.** The former § 7–302 was replaced by the Maine Uniform Prudent Investor Act. *See* 18–A M.R.S.A. § 7–302 (1998). Although not controlling in this action, *see* P.L.1995, ch. 525, §§ 3–4, the Act

obligates a trustee to invest and manage assets "as a prudent investor would, by considering the purposes, terms, distribution requirements and other circumstances of the trust." 18–A M.R.S.A. § 7–302(b)(1) (1998).

**4.** *See also* Restatement (third) of Trusts §§ 227 & cmts. e, i, 229 (1992) (requiring trustee to manage trust investments as a prudent investor would in view of applicable statutes, and the terms, purposes, distribution requirements, and other circumstances of the trust); George G.

duties, he will be liable to the trust in damages. Although we have previously allowed such damages to be measured by "a fair interest on the estate's funds, by the fiduciary's profits from the breach, or by restitution of the estate's assets," *Stowell*, 595 A.2d at 1026, we conclude that the Restatement of Trusts best articulates the proper measure of damages for a trustee's breach of fiduciary duty. A trustee who commits a breach of trust is:

> (a) accountable for any profit accruing to the trust through the breach of trust; or
>
> (b) chargeable with the amount required to restore the values of the trust estate and trust distributions to what they would have been if the trust had been properly administered.

RESTATEMENT (THIRD) OF TRUSTS § 205 (1992).[5] *See Estate of Baldwin*, 442 A.2d 529, 536 & n. 23 (Me.1982).

 [¶ 9] A trust that is "properly administered" is administered by a trustee acting prudently. The proper measure of damages for the breach of William's fiduciary duties was therefore either the profit that accrued during William's unlawful retention of the assets, or the value the assets would have attained had they been placed in the hands of a prudent person acting as trustee of the Family Trust. Because § 205 enumerates alternative measures of damages, the beneficiaries are entitled to elect the measure to be applied to the trustee's breach. *See* III AUSTIN W. SCOTT & WILLIAM F. FRATCHER, THE LAW OF TRUSTS § 205, at 237 (4th ed.1988). The parties' stipulations, however, did not address any profit William may have made from the assets, nor did the parties stipulate to any facts relevant to that issue. Because their stipulations included an agreement that the stipulations "shall be accepted and considered by the court" and that. "no further evidentiary hearing ... shall be required," the court had no evidence before it from which it could award as damages any profits that may have accrued to William. Therefore, the only measure of damages applicable to the facts before the court was the value that the assets would have attained had the trust been properly administered by a prudent trustee, reduced, obviously, by the value of the assets actually delivered to the trustee.

[¶ 10] One of the three measures of damages proposed by the parties was "the investment performance [as] measured by the performance of *prudent professional trustee* in Portland, Maine[.]" (emphasis added). This formulation sets forth precisely the measure of damages available to the successor trustee in this matter. The court's skepticism about the reliability of an "unnamed trustee" in Portland, Maine, overlooks the parties' agreement that the trustee referenced in that stipulation was a *prudent* trustee. Because the parties agreed to the dollar amount of damages if those damages were determined with reference to the value the assets would have attained in the hands of a prudent trustee and because the trustee's duty is, in fact, to act prudently, the court erred by determining the damages with reference to capital appreciation tracking the S & P 500 Index.

[¶ 11] Critical to this determination is the parties' unequivocal agreement to the exact amount of damages caused by William's breach if the damages were determined by reference to the performance of a prudent professional trustee in Portland, Maine managing family trusts similar to the Elinor M. Wilde Revocable Trust Family Trust. By clear implication, the parties also agreed that a prudent trustee would not have invested all of the assets in an S & P 500 Index Fund, nor conversely would a prudent trustee have retained the original assets and made no changes in the portfolio. *Cf. First Alabama Bank v. Spragins*, 515 So.2d 962 (Ala.1987) (affirming award of appreciation damages

---

BOGERT, THE LAW OF TRUSTS & TRUSTEES § 612, at 16 (rev.2d ed.1980) (trustee should consider provisions of the trust, including objectives of the trust and needs of the beneficiaries).

5. "A breach of trust is a violation by the trustee of any duty which as trustee he owes to the beneficiary." RESTATEMENT (SECOND) OF TRUSTS

§ 201 (1959). We rely on the Restatement Second of Trusts only for those sections that were not revised in Restatement Third which deals primarily with the prudent investor rule and related rules concerning a trustee's management of a trust.

where beneficiaries offered expert testimony of trust manager to establish what prudent management of the trust would have yielded but for trustee's breach). Had the court had reliable facts before it from which it could have found that a prudent trustee would have used either the more aggressive or the more conservative investment strategy, it could have determined damages with reference to such strategies. Here, however, the court was faced with the parties' agreement as to the exact value that the assets would have attained in the hands of a prudent trustee. On the facts before it, the court was not free to determine that a prudent trustee would have acted differently than was agreed to by the parties.

[¶ 12] Because the measure of damages to be applied to the facts before the court was the net amount required to restore the values of the trust to what they would have been if the trust had been administered by a prudent trustee, and because the parties stipulated to that amount, the court erred in determining that the damages should be determined by reference to the S & P 500 Index.

The entry is:

Judgment of the Probate Court vacated. Remanded for proceedings consistent with this opinion.

